334 N.W.2d 513 (1983)
In the Matter of J.W.W., III, J.L.W., J.E.W. and S.J.D., Alleged Dependent and Neglected Children.
Nos. 13923, 13924.
Supreme Court of South Dakota.
Argued April 20, 1983.
Decided June 1, 1983.
*514 James F. Margadant, Chamberlain, for children.
Larry D. Hollmann of Hollmann & Hollmann, Chamberlain, for appellant mother.
David J. Larson of Larson, Sundall, Larson & Schaub, Chamberlain, for appellant father.
Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of S.D.; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.
MORGAN, Justice.
This is an appeal from an order terminating parental rights of appellant B.D., mother, and appellant J.W., father, over their children, J.W.W., III, J.L.W., J.E.W. and S.J.D. Parents appeal from the termination order and we affirm.
In 1972, mother married R.D. and during the next four years they had two daughters.[1] In 1976, mother and her two daughters began living with J.W. in West Virginia.[2] Early that year, father was arrested on bad check charges in West Virginia. In June of that year, father was arrested for rape and strong-arm in Tennessee and in October of that year, father was convicted of grand theft in Ohio and was incarcerated in the Ohio State Penitentiary. Mother and father's first child, J.W.W., was born in February, 1977. Shortly thereafter, father was again convicted of grand theft in Ohio, incarcerated in the Ohio State Penitentiary, and subsequently released. He was again arrested in June, 1977, in Norfolk, Virginia and was released from the penitentiary in September, 1978. In February, 1979, mother and father's second child, J.L.W., was born. In May, 1979, a West Virginia Circuit Court found that mother's two daughters from her marriage to R.D. had been physically abused and transferred their custody from mother to their paternal grandmother. *515 In October, 1979, the parents took J.W.W. with them on a trip. Father purchased a car with a no-account check[3] and drove to Illinois where they stopped at a bar for drinks and locked J.W.W. in the car. The police noticed the young child in the car and when mother and father returned, they arrested them and placed J.W.W. in the custody of social services. Mother was released in November, 1979, and obtained custody of J.W.W. In January, 1980, J.E.W. was born. Father was convicted of grand theft and sentenced to the West Virginia Penitentiary. After serving one year, father was extradited to Oregon on bad check charges. In November, 1980, father was released from jail.
In June, 1981, mother and father and their three sons left West Virginia. In Ohio, Indiana and other states along the Interstate, mother and father cashed a series of bad checks. On June 19, 1981, mother opened a checking account in Kimball, South Dakota with the usual $10.00 deposit. The family then drove to Chamberlain, South Dakota, where mother wrote a bad check. When confronted by the police, mother was arrested, father fled, and the three sons were placed in the custody of the South Dakota Department of Social Services (Department). Mother pled guilty to the misdemeanor of passing insufficient funds check and served one year in the Brule County Jail. This action was initiated in June, 1981. In October, 1981, the father, imprisoned in Indiana, made his presence known to the trial court below. In December, 1981, while incarcerated, mother gave birth to their fourth child, S.J.D., a daughter. S.J.D. was placed in the custody of Department. Subsequently, the trial court adjudicated the four children dependent and neglected and thereafter the court terminated mother's and father's parental rights. The parents appeal from the dispositional order terminating their parental rights.
The issues we consider on this appeal are: (1) Whether service by publication upon the father was proper notice? (2) Whether the parents were denied due process when the trial court required proof by clear and convincing evidence at the adjudicatory hearing? (3) Whether the evidence was sufficient to enable the trial court to adjudge the children dependent and neglected and to terminate mother's and father's parental rights?
Initially, father contends he was denied due process by inadequate service of process. Here, it is undisputed that the State served notice of the summons and complaint on father by publication. SDCL 26-8-16 provides, in pertinent part:
Whenever it shall appear from the petition or from affidavit filed in the cause that any person to whom notice should be given resides or has gone out of the state, or on due inquiry cannot be found, or is concealed within the state, or that ... the summons or citation cannot be served upon him ... the judge or clerk shall cause the summons or citation to be published once in some newspaper of general circulation published in the county ....
The well-established rule is that the type of notice employed must be one reasonably calculated to give actual notice. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Father contends personal service or service by mail was more likely than publication to give him actual notice.
In June, 1981, after mother wrote the bad check, father fled when approached by police in Chamberlain. He was sought on bad check charges in this state and there were outstanding warrants on him in other states. When he fled, he left behind the mother, who was pregnant, and his three sons. He was clearly fleeing from the police and the warrants on him. Subsequently, when these proceedings were initiated in *516 June, 1981, the trial court lacked knowledge of father's whereabouts to provide personal service or mail service on him. Logically, if the police in several states were unable to locate father on criminal matters, it is unlikely that a court would be able to obtain personal service or mail service on father on a child custody termination of parental rights case. Service by publication was the only reasonable method of service. The trial court then ordered service by publication in the Brule County News of Kimball, which is a legal newspaper for publication of legal notices in the county. Kimball was also the site of the bank where the account had been opened. The trial court complied with the statutory requirements for notice by publication.
We note the father's own criminal actions prevented his presence with his children during these proceedings. The trial court properly served notice on the father by publications. We hold the trial court properly had jurisdiction over the father.[4]
The second issue is whether the parents were denied due process when the trial court correctly required proof by clear and convincing evidence at the adjudicatory hearing. The thrust of the parents' contention is that since Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), requires proof by the higher standard of "clear and convincing evidence," all adjudication orders fail which are entered while South Dakota's statutory scheme requires merely "by a preponderance of the evidence." SDCL 26-8-22.5. This is a disingenuous argument, wholly without merit.
Admittedly, South Dakota's statutory scheme at the time of the hearing required merely proof by "preponderance of the evidence."[5] SDCL 26-8-22.5. In response to Santosky, supra, this court adopted the "clear and convincing standard" in People in Interest of S.H., 323 N.W.2d 851 (S.D.1982). Accordingly, although the statutory provisions had not changed, the case law of this state required application of the higher evidentiary standard, "clear and convincing" evidence.
Since federal and state law required the standard of "clear and convincing evidence," Santosky, supra; S.H., supra, we hold the trial court was correct in applying this standard in the adjudication hearing and the parents' due process rights were not violated.
The third issue is whether the evidence was sufficient under the clear and convincing standard to enable the trial court to adjudge the children dependent and neglected and to terminate mother's and father's parental rights.
"Clear and convincing evidence," as defined by this court, is that:
[i]ts technical meaning has been expressed as "the witnesses must be found to be credible, that the facts to which *517 they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."
Cromwell v. Hosbrook, 81 S.D. 324, 329, 134 N.W.2d 777, 780 (1965) (citations omitted) cited in Matter of L.A. and W.A., 334 N.W.2d 62 (S.D.1983).
Evidence at trial indicates that the children were physically abused. In 1981, when in the custody of Department, J.W.W., the oldest child, told the social worker that his father would hit and slap him. Although the other children were too young to talk, J.W.W. told the social worker that their father also hit his brothers. Mother's testimony at these hearings supported these statements by J.W.W. She testified that when the father beat her to force her to write bad checks, the children would cry and then the father would beat the children.
The father's treatment of mother and children may evoke some sympathy for her and her plight regarding termination of her parental rights. We have held, however, that where one parent's rights are properly terminated, the other parent's parental rights could also be terminated where the parents live together and returning a child to the other parent would not protect the child from neglect or abuse by the abusing parent. Matter of D.A.B., 313 N.W.2d 787 (S.D.1981); Matter of L.M.T., 305 N.W.2d 399 (S.D.1981); People in Interest of T.L.J., 303 N.W.2d 800 (S.D.1981). The evidence before us is that these parents, B.D. and J.W., have been in a relationship since 1976. Although the father is presently incarcerated in Indiana, the record shows that since 1976 he has been incarcerated at least six times and after each release he and the mother, here, resume living together. Additionally, exhibits entered at these hearings, envelopes from letters mailed back and forth between these parents on which messages are written, indicate strongly that they will resume the same interaction upon their release. Consequently, terminating only the father's parental rights and not the mother's would not protect these children from abuse or neglect.
Further, evidence of neglect and abuse are evident from the Illinois incident. In October, 1979, when the Illinois police found J.W.W. locked in the car, they described his condition as neglected, filthy, and in poor physical condition. A doctor diagnosed J.W.W. as suffering from malnutrition. In June, 1981, when the children were picked up by a Department social worker in South Dakota, the social worker described the children as hungry, underweight, and sick with colds.
In addition to this physical abuse and neglect, the record shows that the parents, B.D. and J.W., would take the children with them apparently as a cover when they conducted their criminal activities. This is exemplified by the check-writing spree along the Interstate from Ohio to South Dakota, culminating in the incident at Chamberlain. As the trial court found "[i]t appears to this Court beyond any doubt that both natural parents have taken one or more of the children with them at various times and knowingly and intentionally used them in their criminal activities." Findings of Fact V.
Considering the physical abuse, neglect, and children's involvement in these criminal activities, the trial court found:
That it appears to this Court by clear and convincing evidence from the history of [B.D.] and [J.W.] and from the totality of the circumstances herein that both said natural parents have caused serious emotional and physical damage to the aforesaid children. The Court also finds by clear and convincing evidence that the behavior patterns of the natural parents herein are strongly established and that any change beneficial to the best interests *518 and welfare of the aforesaid children is extremely unlikely.
Finding of Fact XII (emphasis supplied). As a finding of fact, this court on review can reverse this holding only if this is clearly erroneous. SDCL 15-6-52(a). Considering the history of criminal activities of both parents, the parents' continued involvement with each other, the unsuccessful interaction with social services in three states, and the background of abuse and neglect of these children, the findings of the trial court are not clearly erroneous. Accordingly, we affirm the decision below terminating B.D. and J.W.'s parental rights.[6]
We affirm.
All the Justices concur.
NOTES
[1] After this point, one needs a program to keep track of the players and the crimes involved in this sad commentary on life.
[2] We note mother and R.D. were not divorced until 1981.
[3] For our purposes in this proceeding, we lump no-account and insufficient funds checks in one category of "bad checks." The record shows their modus operandi for passing bad checks was to open an account in a bank with $10.00 or so, secure some check blanks, wait until after the bank was closed and then write sizeable checks for expensive appliances which would then be fenced or hocked to get money.
[4] We further note that the father waived defects in service when he petitioned the court in October of 1981 for counsel to represent him. Although he argues he made a special appearance to contest jurisdiction, the federal rules of civil procedure eliminated the distinction between general and special appearances; South Dakota has adopted these rules. Defenses to jurisdiction must be raised by motion or answer. SDCL 15-6-12(b). If objections to jurisdiction are not made at the appropriate time, either by motion or answer, they are deemed waived. See C.S. Foreman Company v. H.B. Zachry Company, 127 F.Supp. 901 (W.D.Mo.1955). Here, father did not move to dismiss for lack of jurisdiction due to improper service until January 18, 1982. Since he had already petitioned the court for counsel in October, 1981, and petitioned the court in January, 1982, for transcripts of the previous hearings, he failed to timely object and waived objections to jurisdiction. Thus, even if the trial court had failed to properly serve notice by publication, the father brought himself within the jurisdiction of the court, thus providing the trial court with jurisdiction over him.
[5] When the Supreme Court rendered its decision in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), in March, 1982, the South Dakota legislative session which was held during January and February, 1982, had adjourned. S.D. Const. art. III, §§ 6 and 7; SDCL 2-4-1. This court, however, adopted the clear and convincing standard in People in Interest of S.H., 323 N.W.2d 851 (S.D.1982). Thereafter, during the 1983 legislative session, the legislature passed H.B. 1011, amending South Dakota's statutory scheme to require proof of adjudicatory hearings by "clear and convincing evidence."
[6] We find the other issues raised by the parties to this appeal to be wholly without merit.