Kenneth E. JASPER (real party
in interest), Appellant,

v.

Belva J. SMITH, Plaintiff and Appellee,

v.

Dale C. FINCK, Defendant.

No. 18998.

Supreme Court of South Dakota.

Considered on Briefs Sept. 14, 1995.

Decided Nov. 15, 1995.

Mark S. Falk, Rapid City, for appellant.

Mary McCusker, Rapid City, for appellee.

GILBERTSON, Justice.

Kenneth E. Jasper appeals the circuit court's order releasing his attorney's lien against his former client's alimony award. Both parties to this appeal have also filed motions for appellate attorney's fees. We hold the trial court had the authority to determine the proper amount and means of enforcement of Jasper's lien and that such determination does not violate the public pol-

icy of this state. We affirm on Issues I and II and reverse and remand on Issue III.

## FACTS AND PROCEDURE

Belva Smith hired attorney Kenneth E. Jasper to represent her in a divorce action against Dale Finck. Jasper filed the summons and complaint in March 1991. A trial in the matter commenced June 8, 1993, and after several continuances, concluded August 9, 1993.

On September 14, 1993, the trial court granted Belva Smith a divorce from Dale Finck. Smith was awarded $140,260 in assets, including rehabilitative alimony of $475 per month for 36 months and permanent alimony of $250 per month. The court ordered each party to pay its own attorney's fees.

Following conclusion of the divorce action, in January 1994 Smith informed Jasper that she no longer needed his services. Without Jasper's assistance, she collected money awarded her in the divorce action from an IRA, insurance policies, and alimony payment arrearages. Smith subsequently hired attorney Mary McCusker to represent her in some matters Smith claimed were omitted by Jasper during the divorce action; these matters were litigated October 28, 1994.

Jasper served notice of an attorney's lien on Smith, Finck, and Finck's attorney on June 22, 1994. This lien was in the amount of $22,307.75 and was filed against any money owed Smith by Finck, including alimony payments. Thereafter, Smith filed a motion to quash the lien and determine the attorney's fees. A hearing was held September 23 before the same court that granted Smith her divorce. On October 12, 1994, the court held the attorney's lien against Smith's alimony payments to be against public policy and quashed the lien. The court further found that it lacked the authority to determine the proper amount of attorney's fees due. Jasper brought this appeal.

## STANDARD OF REVIEW

■ It is settled law that we review a trial court's findings of fact under the clearly erroneous standard. *Cordell v. Codington County,* 526 N.W.2d 115, 116 (S.D.1994). Under this standard, we will not disturb the court's findings unless they are clearly erroneous and, after a review of all the evidence, we are firmly and definitely convinced a mistake has been made. *Id.* We review conclusions of law under a de novo standard. *Id.* Under this standard, we give no deference to the trial court's conclusions of law. *Id.*

## ANALYSIS AND DECISION

Jasper presents five issues on appeal:

1) Whether the trial court lacked personal and subject matter jurisdiction to quash the attorney's lien;

2) Whether the requirements of SDCL 16–18–22 had been met;

3) Whether SDCL 16–28–21 as applied against alimony awards violates public policy;

4) Whether a document, not authenticated or admitted into evidence at trial, may be incorporated into the court's findings of fact;

5) Whether there was sufficient evidence to support the court's order.

## ISSUE I

*Whether the court lacked personal and subject matter jurisdiction to quash the attorney's lien?*

■ The trial court quashed Jasper's attorney's lien which had been filed against Smith's alimony award. Jasper argues the court lacked subject matter jurisdiction to decide the issue of his attorney's lien because it was a divorce proceeding, and as such, constituted a court of limited jurisdiction.

While this appeal was pending, our decision in *Karras v. Alpha Corporation,* 528 N.W.2d 397 (S.D.1995) was handed down. In *Karras,* we aligned ourselves with the majority of jurisdictions which hold that "an attorney's lien may be enforced either through a separate action or *incident to the underlying litigation." Id.* at 400 (see cases cited therein). In so holding, we specifically adopted the reasoning of the Colorado Supreme Court:

'To restrict the means of enforcement of an attorney's lien *solely* to independent civil actions would be a waste of judicial time[.] ... The trial judge who heard the proceedings which gave rise to the lien is in a position to determine whether the amount asserted as a lien is proper and can determine the means for enforcement of the lien.'

*Id.* at 400–01 (emphasis in original) (quoting *Gee v. Crabtree,* 192 Colo. 550, 560 P.2d 835, 836 (1977)).

*Gee* addressed an action in which an attorney filed notice of an attorney's lien, at the conclusion of a divorce proceeding, to obtain compensation for his legal services in representing his client in that proceeding. This attorney subsequently filed a motion to obtain an order and judgment for his fees. The trial court denied the motion believing it lacked jurisdiction to decide the matter as part of the marriage dissolution proceeding. The Colorado Supreme Court reversed and remanded the trial court's decision stating:

The statutory lien rights which are granted to an attorney are such that an independent action can be the basis for enforcing the lien, but it is also clear that it is proper to assert the lien *in the action in which the attorney performed the services.*

*Gee,* 560 P.2d at 836 (citations omitted). Following this rationale of judicial economy and efficiency, this Court in *Karras* held an attorney's lien may not only be asserted in the action which gave rise to the claim, but may also be enforced by the same trial judge who heard the proceedings giving rise to the claim.

■ Whenever the decisional law upon which a judgment under appeal was based has been changed, we review and determine the issue presented to the trial court in the light of our recent decision. *Klostergaard v. Peterson,* 84 S.D. 215, 217, 169 N.W.2d 259, 261 (1969). The trial court stated in its order to quash that it had jurisdiction over matters involving the alimony award but that it did not have authority to determine the proper amount of attorney's fees owed Jasper by Smith. In light of our recent decision in *Karras,* we hold that the trial court in the divorce proceeding had subject matter jurisdiction to determine both whether the amount of the lien was proper and the means for the lien's enforcement.

■ Jasper argues the trial court did not have personal jurisdiction over Jasper to determine Jasper's attorney's lien. Jasper argues in his reply brief to this Court that he appeared before the trial court "for the sole purpose of objecting to the divorce court's jurisdiction over Attorney in relation to Debtor's motion to quash attorney's statutory lien." Appellant's Reply Brief at 6.

■ We first note the well-settled rule of law that states have personal jurisdiction over those persons residing within their boundaries. *Pennoyer v. Neff,* 95 U.S. 714, 724, 24 L.Ed. 565, 569 (1877), *overruled on other grounds, Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683, 703 (1977). *See also Burnham v. Super. Ct. of Cal.,* 495 U.S. 604, 611, 110 S.Ct. 2105, 2110–11, 109 L.Ed.2d 631, 639–40. SDCL 15–7–2(5) also subjects Jasper to this Court's jurisdiction by his conduct (state court has jurisdiction over a cause of action arising from entering into a contract for services to be rendered in this state).

■ In *In re J.W.W.,* 334 N.W.2d 513 (S.D.1983), we recognized the elimination of the distinction between general and special appearances in South Dakota and further noted that jurisdictional defenses must be made by motion or answer, citing SDCL 15–6–12(b). "If objections to [personal] jurisdiction are not made at the appropriate time, either by motion or answer, they are deemed waived." *Id.* at 516, n. 4; *see C.S. Foreman Co. v. H.B. Zachry Co.,* 127 F.Supp. 901, 902 (W.D.Mo.1955). Jasper failed to file a motion or answer to Smith's motion to quash preferring instead to respond orally at the motion hearing. We hold that the trial court had personal jurisdiction over Jasper in the matter of his attorney's lien.

### ISSUE II

*Whether the requirements of SDCL 16–18–22 had been met?*

■ Jasper claims Smith did not comply with the statutory requirements of SDCL

16–18–22 [1] by posting a bond in an amount double the sum of the lien, and argues these requirements are jurisdictional. Thus, Jasper reasons that the alimony may not be released from the attorney's lien. Our review of the hearing on Jasper's attorney's fees indicates Jasper raised this issue before the trial court and thus it is preserved for our appellate review.

■■■■ Although we have not had prior need to interpret SDCL 16–18–22, we note that in general, a statutory bond must be construed for the purposes contained in that statute. *State Sur. Co. v. Lensing*, 249 N.W.2d 608, 611 (Iowa 1977); *Nelson Roofing & Contracting, Inc. v. C.W. Moore Co.*, 310 Minn. 140, 245 N.W.2d 866, 868 (1976); *Way v. Dep't of Motor Vehicles of State of Neb.*, 217 Neb. 641, 351 N.W.2d 46, 47 (1984); *Giese v. Engelhardt*, 175 N.W.2d 578, 586 (N.D.1970). The statute allows the trial court to set a bond in its discretion in a sum which includes a zero amount ("a sum double the amount claimed, or in such sum as may be fixed by a judge"). In this case that is exactly what the trial court did and proceeded to the lien issue on the merits. Given our decision in *Karras* and the authority of the trial court to set a zero bond, we hold that SDCL 16–18–22 is not jurisdictional as requiring the posting of a bond "double the amount claimed" under the lien. We further hold that the trial court did not abuse its discretion in requiring what amounted to a zero-sum bond.

### ISSUE III

*Whether SDCL 16–18–21 as applied against alimony awards violates public policy?*

■■■ In its order quashing Jasper's lien, the trial court stated it was against public policy to allow an attorney's lien against alimony awarded to an attorney's client. The court had determined that, were Jasper to prevail in his action for an attorney's lien in this matter, Smith would not receive any alimony payments for six years.

■■■ "Public policy is found in the letter or purpose of a constitutional or statutory provision or scheme, or in a judicial decision." *Niesent v. Homestake Mining Co.*, 505 N.W.2d 781, 783 (S.D.1993) (citations omitted). Determination of a violation of public policy presents a question of law and, therefore, is reviewable de novo. *Id.*

This Court has not previously addressed the issue of whether attachment of an attorney's lien to an alimony award violates the public policy of this state. We can find nothing in our review of the constitution, statutes, and case law of this state, however, which would prohibit an attorney's lien against an award of alimony provided a valid contract for fees existed between attorney and client. An examination of the statutes shows the legislature has seen fit to exempt certain property from the attachment process in SDCL ch. 43–45 but alimony is not one of them. [2] Under SDCL 28–7–16, payments made to aid dependent children are also protected from attachment. The existence of these statutes indicates the legislature knows how to exempt property from attachment of a lien when it deems it in the best interest of the state to do so. *See Sander v. Geib, Elston, Frost Pro. Ass'n*, 506 N.W.2d 107, 124 (S.D.1993) (showing when legislature wants to include an entity as a beneficiary of its enactments it also knows how to do so). *See also Last v. Last*, 438 N.W.2d 122, 123 (Minn.Ct.App.1989) (court found statute

1. SDCL 16–18–22 provides:
    Any person interested may release such lien by executing a bond in a sum double the amount claimed, or in such sum as may be fixed by a judge, payable to the attorney, with security to be approved by the clerk of courts, conditioned to pay the amount finally due the attorney for his services which amount may be ascertained by suit on the bond. Such lien will be released unless the attorney within ten days after demand therefor furnishes any party interested a full and complete bill of particulars of the services and amount claimed for each item, or

written contract with the party for whom the services were rendered.

2. The dissent advances substantial policy arguments as to why attorney's liens should not attach to alimony. However, the arguments for or against a minority or majority view are misdirected. It should be a petition to the legislature to change the existing law. There is no constitutional basis for us to invade the legislative domain be it either with a majority or minority rule.

which listed categories of property as exempt from garnishment, but which did not list spousal maintenance, did not preclude attachment of attorney's lien).

SDCL 16–18–21(3) provides an attorney has a lien upon "[m]oney due his client in the hands of the adverse party or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed...." The statute also provides that "after judgment in any court of record such notice may be given and the lien made effective against the judgment debtor by entering it in the judgment docket." There is no exception in the statute with reference to attorney's fees in divorce proceedings. In view of the plain language used, we construe SDCL 16–18–21 as being applicable in such cases.[3]

In *Miller v. Miller*, 83 S.D. 227, 157 N.W.2d 537 (1968), *reh'g denied*, an appeal from a divorce action, we stated a valid contract for fees between an attorney and his or her client, express or implied, was necessary for the existence of an attorney's lien. *Id.*, 157 N.W.2d at 541. We further noted in *Miller* that a contract for contingent fees in a divorce case in which the amount payable was contingent upon the amount of a property division would not support an attorney's lien as such a fee arrangement would violate public policy. *Id.* at 542.

Our rules regarding attorney's fees are found in the Appendix to SDCL ch. 16–18,

the Rules of Professional Conduct. Rule 1.5 states:

> (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law....
>
> ....
>
> (d) A lawyer shall not enter into an arrangement for, charge, or collect:
>
> > (1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof;....

Neither party to this appeal contends the fee arrangement agreed upon by Jasper and Smith was a contingent fee arrangement. Further, the trial court made no such finding nor did it order Jasper's attorney's lien quashed for public policy reasons because of any contingent fee arrangement. Our independent review of the record does not find evidence of such a fee arrangement. Nothing in the record supports the view that the contract for attorney's services between Jasper and Smith in Smith's divorce action was not a valid one.

We hold that an attorney's lien against an alimony award does not violate the public policy of this state provided a valid contract for fees supports the lien.[4] We

---

**3.** We also note that the Minnesota Supreme Court, in construing a similar statute in that state, affirmed an attorney's lien impressed upon an award of alimony. *McDonald v. Johnson*, 229 Minn. 119, 38 N.W.2d 196 (1949). *See also* Marygold S. Melli et al., 3 Alimony, Child Support and Counsel Fees: Award, Modification and Enforcement § 28.05(3)(c) (1992) (attorney may acquire a lien, subject to the provisions of the jurisdiction's law regarding attorney liens, to secure the attorney's fee or expenses).

**4.** Our holding is limited to the issue of alimony. We are aware that the issue of child support often arises in a divorce along with that of alimony. The attempt to attach an attorney's lien to child support has been rejected by the courts in other jurisdictions. *See Fuqua v. Fuqua*, 88 Wash.2d 100, 558 P.2d 801 (1977), the seminal case in this area, and cases cited therein.

The rationale of the courts on this issue has been either that the parent holds the funds as

trustee for the child or that the lien violates public policy. Both arguments apply in South Dakota.

The duty of a parent to support one's child arises both by statute, SDCL 25–7–6.1, and from the common law, *Johansen v. Johansen*, 305 N.W.2d 383, 385 (S.D.1981). This duty is paramount with other debts being secondary. *Brunick v. Brunick*, 405 N.W.2d 633, 634 (S.D. 1987). No exception can be located concerning the duty of a custodial or non-custodial parent to pay attorney's fees. This distinguishes child support from alimony, as there is no corresponding absolute statutory or common law duty to support an ex-spouse via alimony. *See* SDCL 25–4–41; *Fox v. Fox*, 467 N.W.2d 762, 767 (S.D.1991); *Moser v. Moser*, 422 N.W.2d 594, 597 (S.D.1988).

In *Vander Woude v. Vander Woude*, 501 N.W.2d 361, 364 (S.D.1993) we held that child support payments are for the children's benefit and not a debt due the custodial parent per se. Like-

further hold, under our decision in *Karras,* that the trial court has jurisdiction to determine both whether the amount of the lien asserted is proper and the means for enforcing the lien. We reverse and remand to the trial court for a decision not inconsistent with this opinion. Because of our decision to reverse and remand, we need not consider Jasper's issues regarding insufficiency of evidence and the incorporation of documents into the court's findings.

## *ISSUE IV*

*Appellate Attorney's Fees.*

Both parties to this appeal have filed motions for an award of their respective attorneys' fees accompanied by itemized statements setting out their costs incurred in bringing this appeal. *See Malcolm v. Malcolm,* 365 N.W.2d 863, 866 (S.D.1985). Smith's attorney submitted a statement totalling $1,599.04 in fees and costs incurred; Jasper's attorney submitted a statement indicating $4,871.28 has been incurred to date.

■ SDCL 15–17–38 provides the court may award payment of attorneys' fees in "all cases of divorce, annulment of marriage, determination of paternity, separate maintenance, support or alimony." We do not believe an award of attorneys' fees was contemplated by the statute for an action such as this one in which the parties are not the same as those involved in the original divorce action. This is an action to collect fees, not a "case of divorce" even though Jasper earned the fees he seeks to collect representing Smith in her divorce proceeding. Further, we note that under *Karras,* this action could be brought separately. In an action brought separately there would not be a sufficient connection to the underlying divorce action to justify an award of attorneys' fees under this statute.

We therefore deny an award of appellate attorneys' fees to either party to this appeal. The same rationale applies to requests for attorneys' fees for this type of issue before the trial court on remand.

SABERS and AMUNDSON, JJ., concur.

MILLER, C.J., and KONENKAMP, J., dissent.

KONENKAMP, Justice, dissenting.

This is a case in which a lawyer seeks to deny his client the very necessities he told the judge his client must not be denied. In ruling his lien invalid the trial judge told the

---

wise, in State *ex. rel Struck v. Struck,* 526 N.W.2d 500, 502 (S.D.1995), we reasoned that it is presumed that a custodial parent spends his or her share of child support received directly for the benefit of the child. SDCL 25–7–6.2. As such, there must be a legal basis for a recovery against the child rather than the custodial parent to enforce an attorney's lien against child support. *Cf. In re Discipline of Tidball,* 503 N.W.2d 850, 854 (S.D.1993). None can be found. We specifically reject any claims by an attorney as were considered in *Fuqua* that such a lien may attach to child support because the attorney provided "necessities" for the trust beneficiary. In South Dakota, the child support obligation was created by common law and statute and may be enforced or modified by a state's attorney, SDCL 7–16–13, or even by the custodial parent, pro se, *e.g.* SDCL 25–7A–22. Thus, while attorney's services are helpful in obtaining a child support award, they are not necessary, much as in this case where Smith by herself collected on an IRA, insurance policies of her former husband, and alimony arrearages.

The statutory scheme for attorney's fees clearly does not contemplate the attachment of a lien on child support payments based on a trust theory. SDCL 16–18–21 provides an attorney has a lien upon "[m]oney due HIS CLIENT in the hands of an ADVERSE PARTY or attorney of such party, in an action or proceeding in which the attorney claiming the lien WAS EMPLOYED...."
(emphasis added). While the ex-spouse employed the attorney and thus became his or her client, a child is not a party to the divorce proceeding, did not employ the attorney, and the other party who holds the funds is not an "adverse party" to his or her own child.

In addition, the statutes and case law of this jurisdiction make it clear that the public policy of this state is that the amount established as child support be "for the necessary maintenance, education and support of the child" only, and no excess is intended to exist for such extraneous claims such as parental attorney fees. *E.g.,* SDCL 25–7–6.1. "All too often in setting child support, '[t]here are simply too few dollars to meet even the most modest standard of living ... [and judges] are called upon to apportion poverty and its accompanying misery....' " *Ochs v. Nelson,* 538 N.W.2d 527, 531 (S.D.1995) (quoting State *ex rel. V.K.H. v. S.W.,* 442 N.W.2d 920, 925 (S.D. 1989) (Gilbertson, Circuit Judge, concurring).

wife's former attorney, it was "wretched that you, months ago were arguing for the needs and necessities of your client and now you're trying to take every bit of it away from her to the extent of some $22,307 worth of alimony at the rate of $450 a month. That's about $6,000 a year she would be without any sustenance whatsoever for almost four years." Most courts prohibit attorney's liens on support and so should we.

The Washington Supreme Court summarized the preeminent rule in this area:

> A majority of courts of other jurisdictions have declared attorney's liens filed against funds representing either child support or alimony to be invalid. Generally speaking, these decisions have been based upon considerations of public policy.

*Fuqua v. Fuqua*, 88 Wash.2d 100, 558 P.2d 801, 804 (1977) (citations omitted). The same principle is found in 7 Am.Jur.2d Attorneys at Law § 339: "It is held that a charging lien does not attach to a decree awarding alimony or to an order for support and maintenance." * Instead, the majority here embraces the minority rule. *See McDonald v. Johnson*, 229 Minn. 119, 38 N.W.2d 196 (1949).

The unique purpose of alimony, awarded so an ex-spouse can continue to survive or to obtain skills necessary to survive, makes its diversion through an attorney's lien inimical to public policy.

> [T]he law does not permit an attorney's lien to attach to the alimony paid to the wife under a decree. It is intended for the support of the party to whom it is awarded, its amount is fixed with reference to her necessities and the courts will not countenance its appropriation to any other purpose.

*Indell v. Tabor*, 185 N.Y.S. 873, 874 (N.Y.Sup.Ct.1920) (citation omitted). The following cases have likewise disallowed such liens on alimony payments: *Johnson v. Gerald*, 216 Ala. 581, 113 So. 447 (1927)(attorney lien statute does not apply to divorce cases); *Leone v. Leone*, 619 So.2d 323 (Fla.Dist.Ct.App.1993)(attorney's charging lien should not be enforced against award of alimony if to do so would deprive former spouse of daily sustenance or minimal necessities of life); *Thoresen v. Thoresen*, 293 Ill.App. 168, 12 N.E.2d 28 (1937)(alimony not subject to attorney lien); *Hubbard v. Ellithorpe*, 135 Iowa 259, 112 N.W. 796 (1907)(attorney lien on temporary alimony not allowed); *Bucknam v. Bucknam*, 347 Mo. 1039, 151 S.W.2d 1097 (1941)(attorney lien is an unauthorized charge against alimony but here the suit was for collection of unpaid alimony and parties contracted to fee agreement); *Hilleary v. Hilleary*, 189 Mo.App. 704, 175 S.W. 282 (1915)(there can be no attorney's lien on alimony awarded for maintenance and support and is distinguishable from an ordinary suit for damages); *Owen v. Forchelli*, 42 Misc.2d 1064, 249 N.Y.S.2d 913 (1964)(public policy dictates that attorney's charging lien does not apply to alimony).

A majority of appellate courts have ensured that a trial judge's carefully crafted plan for maintaining a former spouse cannot be subverted through an attorney's lien. This rule accords with South Dakota's public policy reflected in a panoply of laws designed to guarantee spouses will not go unsupported. See SDCL 25-4-39 (spouse may maintain action for support although divorce denied); SDCL 25-4-40 (action for separate maintenance may be maintained without request for divorce); SDCL 25-4-41 (allowance for spousal support maintainable when divorce granted); SDCL 25-7-5 (duty to support spouse); SDCL 25-7-4 (failure to support spouse is chargeable as a felony); SDCL 21-18-52 (maximum garnishment allowed for support). Surely this broad legislative policy ensuring continued spousal support precludes an attempt by an attorney to impose a charging lien upon it. Indeed, we recently recognized the same protective policy in bankruptcy law, which exempts from discharge spousal support obligations. *Hogie v. Hogie*, 527 N.W.2d 915 (S.D.1995).

---

* The majority concedes child support is protected from an attorney's lien. It also relies on *Miller v. Miller*, 83 S.D. 227, 157 N.W.2d 537 (1968) to support the rule that an attorney's lien cannot be supported by a contingent fee arrangement in divorce actions. To support its public policy rationale, the *Miller* Court used the same source noted in this dissent: American Jurisprudence.

South Dakota law specifically provides for payment of attorney fees by the other spouse in divorce actions under certain circumstances. SDCL 15–17–38 (formerly SDCL 15–17–7). This is clearly part of South Dakota's policy preserving spousal financial well-being. "The granting of attorney fees is based upon the same policy of providing support for the spouse who needs it at the expense of the spouse who can afford to provide it as is temporary alimony." Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 16.2 (2d ed. 1988).

If attorneys can seize their clients' support payments to pay their fees, as this Court now holds, then its position is sadly ironic: An attorney hired to obtain support for a client, gains a support award only to keep it for fees. One must then ask, did the client's case exist only to pay the attorney? A majority of courts have anticipated the absurdity of such a result and have rightly forestalled it. Support is based on needs and must be safeguarded.

The law does not preclude an attorney's lien on property or cash awarded in lieu of property in a divorce action, but support payments must occupy a protected status, because without them an ex-spouse may not survive.

MILLER, C.J., joins this dissent and I am authorized to so state.