1999 SD 8

Charles E. WOOD, Jr., Plaintiff and Appellant,

v.

SOUTH DAKOTA CEMENT PLANT, Defendant and Appellee.

No. 20251.

Supreme Court of South Dakota.

Argued Dec. 1, 1998.

Decided Jan. 20, 1999.

---

John J. Delaney of Delaney & Sumner, LLP, Rapid City, for plaintiff and appellant.

James S. Nelson and Donald P. Knudsen of Gunderson, Palmer, Goodsell & Nelson, LLP, Rapid City, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Charles Wood appeals a judgment denying his claim under SDCL 60–4–11 for lost wages following his termination from the South Dakota Cement Plant (Cement Plant) for off-duty, off-premises tobacco smoking. We affirm.

### FACTS

[¶ 2.] Wood began working at Cement Plant as a temporary employee in April 1992. He worked in both the wet and dry kilns. There were no restrictions on his tobacco use while he was a temporary employee.

[¶ 3.] Wood applied for a full-time assistant kiln operator position in November 1992. He was offered the position in a letter dated December 31. The letter stated that "[t]his offer is contingent upon your successful completion of a physical examination, chemical screening and hearing exam." He wrote "I accept" and signed the bottom of the letter.

[¶ 4.] Cement Plant was notified of the results of Wood's physical examination. Dr. Wessel reported an abnormal chest x-ray and that Wood had a chest mass in his lung that was being evaluated by the VA hospital. Dr. Wessel recommended requiring him to stop smoking as a condition of his employment. The recommendation was based upon Wood's history of more than twenty years of smoking, his abnormal chest x-ray, and the exposure to dust associated with the assistant kiln operator position.

[¶ 5.] Wood was notified on January 28, 1993 that his employment was conditioned upon his agreement to stop smoking and refrain from smoking while employed at Cement Plant. Wood initially refused to agree. He was advised by a union representative not to accept the terms of the conditional employment. However, Wood signed an agreement on February 19, 1993 accepting the conditions.[1]

---

1. The agreement provided:
   Based on the recent recommendation of Dr. Wessel, company physician, Dacotah Cement is requesting that you stop smoking immediate-

ly and take whatever steps necessary to ensure that you do not smoke while working for Dacotah Cement. Dr. Wessel has stated that it would be unwise and hazardous to your health

[¶ 6.] From February 1993 to November 1994, Wood provided several urine specimens for nicotine screening. The tests showed evidence of nicotine, but the levels were sufficiently low to be consistent with passive exposure. Wood later admitted to manipulating the results by drinking excessive amounts of water prior to the test. He testified that he never stopped smoking for more than a twenty-four hour period.

[¶ 7.] Wood was notified on November 16, 1994 that his last urine test had indicated "an active use of a nicotine containing product." [2] Another test was scheduled for November 18. He was informed that "[i]f you fail this test, . . . you will be terminated. The termination will be effective the date the report is received by Dacotah Cement[.]" The November 18 test indicated an active use of nicotine and Wood was notified of his immediate termination on December 1, 1994.

[¶ 8.] Wood filed a grievance with the South Dakota Department of Labor (Department) claiming Cement Plant terminated his employment in violation of SDCL 60–4–11. Cement Plant participated in the grievance process. Department ruled it lacked jurisdiction to decide claims under SDCL 60–4–11.

[¶ 9.] Wood then filed suit against Cement Plant in circuit court seeking damages of lost wages. A court trial resulted in a judgment denying Wood's claim. The trial court found that:

1) Wood was precluded from pursing his claim because he failed to give Cement Plant notice as required for a public entity under SDCL 3–21–2;

2) Cement Plant did not violate SDCL 60–4–11 because the smoking restriction placed upon Wood's employment was related to a bona fide occupational requirement and was reasonably and rationally related to the employment activities and responsibilities of a particular employee or group of employees, rather than all employees;

3) Wood waived any rights he had under SDCL 60–4–11 when he accepted conditional employment with Cement Plant;

4) Wood was estopped from pursing his claim based on promissory estoppel;

5) Wood's intentional manipulation of his urine tests and deceptive behavior regarding his continued smoking provided Cement Plant with grounds for termination independent from his smoking; and

6) Wood failed to prove his damages for lost wages to a reasonable degree of certainty.

Wood appeals issues 1), 2), 3), 4) and 6), but does not appeal issue 5).

## STANDARD OF REVIEW

◼ Our standard of review of the trial court's findings of fact is under a clearly erroneous standard. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995). The trial court's findings will not be disturbed unless the court is "firmly and definitely convinced a mistake has been made." *Jasper*, 540 N.W.2d at 401. Conclusions of law, on the other hand, are reviewed under a de novo standard, giving no deference to the trial court's conclusions of law. *Id.* *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771.

[¶ 10.] **1. WHETHER CEMENT PLANT IS ENTITLED TO NOTICE UNDER SDCL 3–21–2 AS A PUBLIC ENTITY; IF SO, DID WOOD SUBSTANTIALLY COMPLY WITH THE NOTICE REQUIREMENTS.**

[¶ 11.] Prior to and during the court trial, Cement Plant argued that Wood's claim was barred because he failed to give written notice of the time, place, and cause of the injury

---

to employ you in this work environment while you continue to smoke.
We agree to continue with your employment under the condition that you agree to stop smoking and voluntarily be available for a random test to ensure that you have honored your commitment not to smoke while employed at Dacotah Cement.

Violation of this agreement will result in termination.

2. Although other substances contain nicotine, Wood never denied that the evidence of nicotine in his urine was the result of his smoking cigarettes.

within 180 days after the injury as required by SDCL 3–21–2. The trial court agreed. On appeal, Cement Plant concedes that, under *Myears v. Charles Mix County*, 1997 SD 89, ¶ 13, 566 N.W.2d 470, 474, Wood substantially complied with the notice requirements. Therefore, we need not address whether Cement Plant is a public entity entitled to notice under SDCL 3–21–2 because, even if SDCL 3–21–2 is applicable, Wood substantially complied with its requirements during the grievance proceedings.

### [¶ 12.] 2. WHETHER WOOD'S EMPLOYMENT WAS TERMINATED IN VIOLATION OF SDCL 60–4–11.

[¶ 13.] SDCL 60–4–11 provides, in part:

It is a discriminatory or unfair employment practice for an employer to terminate the employment of an employee. due to that employee's engaging in any use of tobacco products off the premises of the employer during nonworking hours unless such a restriction:

(1) Relates to a bona fide occupational requirement and is reasonably related to the employment activities and responsibilities of a particular employee or a particular group of employees, rather than to all employees of the employer;

. . . .

Notwithstanding any other provisions of this chapter, the sole remedy for any person claiming to be aggrieved by a discriminatory or unfair employment practice as defined in this section shall be as follows: the person may bring a civil suit for damages in circuit court and may sue for all wages and benefits which have been due up to and including the date of the judgment had the discriminatory or unfair employment practice not occurred. However, nothing in this section may be construed to relieve such person from the obligation to mitigate damages.

[¶ 14.] The trial court found that the position of assistant kiln operator requires an employee be physically capable of performing the required duties, specifically that the employee's physical condition permit him to perform those duties in a dusty environment. It viewed a videotape of the kiln area and heard testimony from a production superintendent at Cement Plant regarding the work environment and duties of an assistant kiln operator. It found that the work environment contains "significant amounts of airborne dust, as well as dust which has settled upon walkways, handrails, and other areas."

[¶ 15.] Typical duties of an assistant kiln operator include visually checking the kilns, monitoring the flow of material to and from the kilns, and measuring the amount of dust in dust bins and removing it as required. According to a survey of essential functions of the position completed in compliance with the Americans with Disabilities Act, an assistant kiln operator "must be healthy to perform duties and to withstand conditions in job area (heat, dust, noise, etc., cold)[.]" Cement Plant showed that the smoking restriction placed on Wood related to a bona fide occupational requirement that an assistant kiln operator be able to physically perform his duties while working in a dusty environment.

[¶ 16.] Dr. Wessel recommended that Wood and two other individuals seeking similar positions be required to stop smoking as a condition of their employment. He reported that "[a]ll have an abnormal chest x-ray with a long-standing smoking history and in light of the potential exposure to dust and environmental things at the Cement Plant, I feel [it] would be in their best interest for them to cease smoking immediately. I feel strongly enough about this that it should be a condition of employment in light of the fact of exposure and eventually the potential for liability for the Cement Plant." The trial court found that, according to Dr. Wessel, Wood would be unsuitable for the position of assistant kiln operator unless he quit smoking and refrained from smoking while employed in that position. SDCL 60–4–11 requires that the restriction be reasonably and rationally related to the employment activities of -a particular employee or particular group of employees, instead of all employees. The restriction was reasonably and rationally related to Wood's employment activities and responsibilities because Dr. Wessel concluded Wood was unsuitable for the position un-

less he ceased smoking. Dr. Wessel based his conclusion on Wood's history of more than twenty years of smoking and his abnormal chest x-ray.

[¶ 17.] Wood has not shown that the trial court's findings of fact are clearly erroneous. The trial court found that the smoking restriction placed on Wood by Cement Plant related to a bona fide occupational requirement and was reasonably and rationally related to the employment activities and responsibilities of Wood and other employees with a history of chronic smoking, an abnormal chest x-ray, and exposure to dust which could aggravate their physical conditions. We agree. Therefore, Cement Plant did not violate SDCL 60–4–11 when it terminated Wood's employment and we affirm.

[¶ 18.] Our determination of issue 2) makes it unnecessary to address in detail issues 3), 4), and 6). However, we note that even if Cement Plant had violated SDCL 60–4–11 when it terminated Wood's employment, he would be barred from bringing his claim under the principle of 3) waiver due to his acceptance in writing of the "no smoking" condition of employment for his position as an assistant kiln operator and by his failure to appeal from issue 5) where the trial court found his fraud constituted an independent ground for termination.

[¶ 19.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 20.] AMUNDSON, Justice, concurs in result.

AMUNDSON, Justice (concurring in result).

[¶ 21.] I concur that the trial court should be affirmed on issue five which was not appealed.