#26797-a-JKK

**2014 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

AMCO INSURANCE CO.,                     Plaintiff and Appellant,

     v.

EMPLOYERS MUTUAL CASUALTY
COMPANY d/b/a EMC INSURANCE
COMPANIES,                         Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

JAMES E. MOORE
CHERI S. RAYMOND of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota          Attorneys for plaintiff
                             and appellant.


TIMOTHY M. GEBHART
JUSTIN T. CLARKE of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota          Attorneys for defendant
                             and appellee.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 18, 2014

OPINION FILED **04/16/14**

#26797

KONENKAMP, Justice

[¶1.]     In this dispute between successive commercial general liability insurers, we are asked to declare void as against public policy an exclusion barring coverage for an unknown progressive or continuous injury or damage that occurred before the inception date of the successor insurance policy.

**Background**

[¶2.]     Steven Thomas & Sons, LLC was a South Dakota limited liability company.[1]  In 2002, Swift Contractors, Inc. hired Thomas & Sons to do excavation and soil compaction work for an addition to a school building in the Kimball School District.  The project was completed in 2004.  At some point in 2005, the building's floor started to shift and, in 2006, cracks began to appear on certain interior masonry walls.  Swift, the School District, and architect Glenn Mannes were aware of the problems.  Mannes recommended that these conditions be monitored.

[¶3.]     In 2008, the problems persisted, and the School District hired a geotechnical investigation company and an engineering firm to investigate the issues with the building.  In 2010, the School District received a final report indicating that the settling issue was caused primarily by the use of low-moisture clay, that the bowing of the north and west exterior walls was due to improper compaction of the backfill soils, and that the moisture in the clay soils would continue to expand and cause additional distress.  The problems were attributed to negligently performed excavation and compaction work by Thomas & Sons.

---

1.     Thomas & Sons became inactive, and was administratively dissolved as of May 20, 2010, after Steven Thomas died.

-1-

[¶4.] In March 2010, Thomas & Sons's commercial general liability insurer, Employers Mutual Casualty Company (EMC), received notice from the School District of the potential claims against Thomas & Sons. Three weeks later, EMC issued Thomas & Sons a letter indicating that it intended to investigate the alleged loss and injury because it believed certain exclusions in the policy might preclude coverage. In August 2010, the School District brought suit against Thomas & Sons and several other defendants. EMC officially withdrew from participating in, or contributing to, Thomas & Sons's defense. EMC asserted that it had no duty to defend because, among other reasons, Thomas & Sons's policy excluded coverage for continuous or progressive property damage that occurred before the effective date of the policy. According to EMC, the damage to the building's floor was first observed in 2005, and the damage to the foundation and structure were observed in 2006, both which occurred before the April 2007 policy inception date.

[¶5.] In 2005 and 2006, Thomas & Sons was insured by AMCO Insurance Company. Like EMC, AMCO had been notified of the School District's claim against Thomas & Sons. After EMC withdrew and refused to share in the cost of defending the claim, AMCO wrote EMC and asked that it reconsider its decision because the damage was unknown to Thomas & Sons before EMC's policy took effect. EMC declined. Ultimately, AMCO paid defense costs of $124,853 and indemnified Thomas & Sons $342,187.50, plus prejudgment interest, for Thomas & Sons's share of the arbitration award in favor of the Kimball School District.

[¶6.] AMCO brought a declaratory judgment action against EMC seeking a ruling that EMC had a joint duty to defend Thomas & Sons, and therefore, EMC is

liable for its share of the defense costs, including its share in satisfying the arbitration award against Thomas & Sons. AMCO asked the court to declare EMC's policy exclusion void as against public policy. EMC and AMCO moved for summary judgment. After a hearing, the circuit court granted EMC summary judgment and dismissed AMCO's cross-motion for summary judgment. AMCO appeals.[2]

### Analysis and Decision

[¶7.] AMCO asks this Court to declare that EMC's exclusion for unknown progressive or continuous injury or damage violates public policy and is therefore void. AMCO concedes that almost every other state, including South Dakota, has not specifically addressed the validity of an exclusion for unknown continuous or progressive damage. Yet AMCO asserts that it is the policy in this State that commercial general liability coverage "insure against risks outside the insured's control" and protect the insured against loss from unknown events. AMCO believes that EMC's exclusion "is antithetical to the nature of insurance, excludes coverage for no purpose other than EMC's profit, and leaves EMC's insureds without indemnity coverage in all cases involving continuous injury beginning before EMC's coverage."

---

2. Standard of Review: "Whether a contract violates public policy is a question of law, reviewable de novo." *Law Capital, Inc. v. Kettering,* 2013 S.D. 66, ¶ 10, 836 N.W.2d 642, 645 (citing *Jasper v. Smith,* 540 N.W.2d 399, 403 (S.D. 1995)). Similarly, we review de novo whether the moving party was entitled to summary judgment as a matter of law. *Id.* (citing SDCL 15-6-56(c)) (additional citation omitted).

[¶8.]     EMC, on the other hand, contends that its policy exclusion does not conflict with the purpose of insurance. Its policy language identified the risks it agreed to assume in return for the premiums paid by the insured. "If Thomas did not like the policy provision, it could have sought coverage with another insurer or perhaps paid a higher premium without the Endorsement." EMC further avers that absent a constitutional or statutory provision or a judicial decision clearly revealing South Dakota's existent public policy, this Court's duty is to maintain and enforce the parties' contract.

[¶9.]     "The existence of the rights and obligations of parties to an insurance [contract] are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 20, 621 N.W.2d 592, 598-99 (citations omitted). Here, it is undisputed that the terms of the insurance contract are unambiguous. It excludes coverage for an unknown loss that was in progress at the inception date of the policy or that occurred before the inception date of the policy.[3] The parties further

_____

3.     EMC's Continuous or Progressive Injury or Damage Endorsement provides:

> Exclusion for "Bodily Injury" or "Property Damage" Which Commences Prior to the Inception of Policy.
>
> This Insurance does not apply to any "bodily injury" or "property damage" which was in progress as of the inception date of this policy or which commenced, or which is alleged to have occurred, prior to the inception or effective date of this policy, whether such "bodily injury" or "property damage" is known, unknown or should have been known by any "insured." We have no duty to defend any "suit" or claim alleging such "bodily injury" or "property damage."
>
> This exclusion applies regardless of whether any "bodily injury" or "property damage" which commenced prior to the inception of

(continued . . .)

agree that the property damage to the Kimball school began before EMC's coverage period and that it was unknown to Thomas & Sons before the effective date of EMC's policy.

[¶10.] Notwithstanding the contract's unambiguous policy language and the undisputed facts, "the conditions and limitations imposed by the insurance company must be consistent with public policy[.]" *See Phen v. Progressive N. Ins. Co.*, 2003 S.D. 133, ¶ 6, 672 N.W.2d 52, 54; *see also* SDCL 53-9-1. Long ago, this Court declared that "[p]ublic policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good." *Bartron v. Codington Cnty.*, 68 S.D. 309, 322, 2 N.W.2d 337, 343 (1942) (citations omitted). But courts "do no more than declare the existence of a policy revealed to them by a process of interpretation" of statutory and constitutional provisions, judicial decisions, and administrative actions. *Id.* at 322-23, 2 N.W.2d at 343; *see also Gloe v. Iowa Mut. Ins. Co.*, 2005 S.D. 29, ¶ 17, 694 N.W.2d 238, 244-45; 7 Steven Plitt *et. al, Couch on Insurance* § 101:15 (3d ed. 2013). Public policy safeguards "'that which the community wants' and not 'that which an ideal community ought to want.'" *Bartron,* 68 S.D. at 323, 2 N.W.2d at 343 (citation omitted). Therefore, "[u]ntil firmly and solemnly convinced that an existent public policy is clearly revealed, a court is not warranted in applying the principle under consideration." *Id.* at 323, 2 N.W.2d at 344.

---

(. . . continued)

        effective date of this policy, or which is, or is alleged to be occurring as of the inception of this policy, continues or progressively deteriorates during or after this policy period.

[¶11.]     The principle under consideration here is whether it is against public policy in this State for a commercial general liability insurer to exclude coverage for a continuing or progressive loss that is unknown to the insured at the inception date of the policy.  No South Dakota constitutional provision, statute, administrative agency action, or judicial decision addresses this or any similar exclusion.  *See Jasper*, 540 N.W.2d at 403-04.  A review of our statutes governing liability insurance reveals no provision prohibiting a commercial general liability insurer from excluding coverage for an unknown continuous or progressive loss that occurs before the inception date of the policy.  Commercial general liability insurance is not specifically mentioned or defined in our code.  Rather, "[i]nsurance" is broadly defined as "a contract whereby one undertakes to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies[.]"  SDCL 58-1-2(8).

[¶12.]     AMCO directs us to a Colorado statute, which declares "void and unenforceable" any commercial general liability policy exclusion barring coverage where the preexisting injury or damage was unknown.  *See* Colo. Rev. Stat. 10-4-110.4.  The Colorado Legislature has specifically declared that "[t]he interpretation of insurance policies issued to construction professionals is of *vital importance* to the economic and social welfare of the citizens of Colorado**[.]**"  Colo. Rev. Stat. 13-20-808(1)(a)(I) (emphasis added).  The South Dakota Legislature has not enacted a similar tenet in our statutes regulating commercial general liability insurance.  Nor has AMCO directed us to any action by the South Dakota Division of Insurance related to commercial general liability insurance.

[¶13.]     Although our Legislature has yet to examine the efficacy of an exclusion for an unknown continuous or progressive loss, a review of relevant treatises reveals a recognized trend in the commercial insurance industry that insurers are narrowing coverage for continuous and progressive injury or damage. As one commentator noted, "[o]ne of the more vexing issues arising under occurrence-based liability coverage is determining which policy or policies apply when injury occurs over long periods of time." 4 Philip L. Bruner & Partick J. O'Connor, Jr., *Bruner and O'Connor on Construction Law* § 11:175 (2013). "The number of potentially relevant dates grows rapidly if the case involves such complicating elements as a long interval between the time that the insured committed the wrongful act and the time that this act produced an ascertainable injury or an injury which continues or increases over a period of time." Plitt *et al.*, *supra*, § 102:22. Therefore, insurance companies "may word the insurance contract so as to" make "the test for coverage narrower." *Id.* § 102:27. And "[c]oncerns over latent and long-festering property damage losses has led the industry to craft policies with manuscript exclusions intended to affect traditional coverage triggers." Bruner & O'Connor, *supra*, § 11:150.

[¶14.]     Despite this trend in the industry, AMCO asks us to consider certain additional factors and declare that the contract nevertheless contravenes public policy. *See* 17A Am. Jur. 2d *Contracts* 244 (2014). These factors include:

> (1) the nature of the subject matter of the contract;
> (2) the strength of the public policy underlying any relevant statute;
> (3) the likelihood that refusal to enforce the bargain or term will further any such policy;

(4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and
(5) the parties' relative bargaining power and freedom to contract.

*Id.* Consideration of these additional factors, however, does not lead us to conclude that EMC's exclusion violates public policy. Commercial general liability insurance contracts commonly limit the risks the insurer intends to indemnify. EMC crafted a specific contract exclusion for "property damage" that "commenced or which is alleged to have occurred, prior to the inception or effective date of this policy," whether the damage is "known, unknown, or should have been known" by the insured. Because EMC's policy provision is neither "prohibited by statute, condemned by judicial decision, nor contrary to any identifiable public morals," we see no indication that its exclusion violates public policy. *See Claude v. Guar. Nat'l Ins. Co.*, 679 N.W.2d 659, 663 (Iowa 2004) (citation omitted).

[¶15.] Affirmed.

[¶16.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and TIMM, Circuit Court Judge, concur.

[¶17.] TIMM, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.