Victor J. WANG, Plaintiff and Appellant,

v.

Robert L. WANG, Defendant, Third Party Plaintiff and Appellant,

v.

ROSEBUD FEDERAL CREDIT UNION OF WINNER; Farmer's Cooperative Oil Association of Winner; Albert Schramm and Larry Meiners, Third Party Defendants and Appellees.

Nos. 16295, 16299.

Supreme Court of South Dakota.

Argued Feb. 13, 1989.

Decided Nov. 1, 1989.

David L. Claggett, Spearfish, for appellant Victor Wang.

Bryce Flint of Jackley & Flint, Sturgis, for appellant Robert L. Wang.

Lonnie R. Braun of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellees Rosebud Federal Credit Union, Albert Schramm and Larry Meiners.

Donald E. Covey of Covey Law Office, Winner, for appellee Farmer's Co-op. Oil Ass'n of Winner.

GERKEN, Circuit Judge.

This is the third appeal arising out of the transactions that gave birth to *Wang v. Wang*, 393 N.W.2d 771 (S.D.1986) (*Wang I*) and *Wang v. Wang*, 440 N.W.2d 740 (S.D. 1989) (*Wang II*). Robert Wang (Robert) and Victor Wang (Victor) have separately appealed from the same summary judgment. We affirm.

On January 18, 1978, Victor executed a promissory note to the Rosebud Federal Credit Union (RFCU) due and payable on January 19, 1979. The note was secured by financing agreements on various items of Victor's property. At this time RFCU and its affiliate Farmer's Cooperative Oil Company (Co-op) of Winner, South Dakota, had a written agreement providing that Co-op would guarantee patrons' notes to RFCU to the extent that the proceeds were used for Co-op purchases. Albert Schramm (Schramm), an officer of both RFCU and Co-op, co-signed Victor's note without an indication that he did so in a representative capacity.

On January 18, 1979, Victor was unable to meet his obligation under the note and, upon demand by RFCU, Co-op paid $43,-344.00 under the terms of the guaranty agreement. In July 1980 Robert became involved with the note and security agreement. Negotiations with the manager of RFCU, Larry Meiners (Meiners), culminated in an agreement to sell Robert the note and security agreements for $8,000.00. Schramm signed the assignment agreement on behalf of RFCU and Meiners signed as a witness. Shortly after this assignment Robert made demand upon Schramm, as co-maker, to pay the amounts then claimed due on the note.

In August 1981 Robert brought suit against both Victor and Schramm to recover on the note by virtue of the assignment. The jury returned a verdict finding Victor liable on the note and absolving Schramm from liability. Robert appealed from the verdict for Schramm. In *Wang I, supra,* this Court determined that Schramm's signature on the note was "bare." Without any showing that he signed in a representative capacity Schramm could be held personally liable as a co-maker. On retrial judgment was entered against Schramm in the amount of $42,900.00.

While the appeal in *Wang I* was in process, Robert sold the collateral to himself for $100.00 on January 18, 1985. After this foreclosure sale, Robert, in September 1987, brought suit against Victor and Schramm to recover a deficiency judgment. The jury returned a verdict against Schramm in the amount of $42,900.00. Schramm's appeal from the verdict and judgment for Robert constitutes *Wang II, supra.* The substance of that decision was that Robert constructively (defacto) elected strict foreclosure under the facts of the case and by the following actions:

(1) Robert took and maintained exclusive control and possession of the collateral from the time he purchased the note in July 1980:

(2) Robert continuously held the collateral on his property and told Victor not to remove it and to stay away;

(3) It was not until over a year later, in August 1981, that Robert filed suit to collect on the promissory note; and

(4) Robert did not undertake the sale of the collateral until December 1984, some four and one-half years after taking possession.

Because Robert elected strict foreclosure he was barred from obtaining a deficiency judgment. Judgment in Robert's favor was reversed and the matter remanded with instructions to enter judgment in favor of Schramm.

In January 1986, between Robert's 1981 suit on the note and his 1987 suit for deficiency, Victor started an action against Robert alleging that Victor's signature on the 1978 promissory note was a forgery. Victor alleged that as a result of this forgery and the subsequent events referred to above, he suffered loss of property, income and reputation. In February 1986 Robert, by third-party complaint, sued RFCU, Co-op and Schramm alleging forgery on the promissory note and deceit in assignment of the note. Robert sought damages in tort and indemnity for all amounts adjudged due Victor from him. The third-party defendants moved for summary judgment seeking dismissal of both complaints. The trial court granted summary judgment against Victor on the basis that Victor had ratified the note and granted summary judgment against Robert on the basis that he had elected his remedy in contract and could not now proceed in tort. It is from these orders that Robert and Victor appeal.

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159 (S.D.1987). The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Railway Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). The non-moving party, however, must present specific facts which demonstrate a genuine, material issue for trial. *Ruane v. Murray,* 380 N.W.2d 362 (S.D. 1986). When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses. *Wilson, supra.* Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983).

■ We first address the trial court's granting summary judgment against Victor. The issue is a simple one. Did the

trial court err in granting summary judgment to the third-party defendants on the theory that Victor had ratified the promissory note in question?

The trial court's grant of summary judgment was based on Victor's signing the bottom of the note and acknowledging receipt of it, as well as failing to defend the contract action on the basis that it was a forgery and allowing the property to be repossessed and sold.

Victor claims that the trial court erred when it found that he ratified the forgery by signing the bottom of the note and acknowledging receipt of it. Victor contends that he did not have the intent to ratify or the full knowledge of the material facts required for ratification. *Bank of Hoven v. Rausch,* 382 N.W.2d 39 (S.D. 1986). He contends that he lacked these prerequisites since the dollar amount of the promissory note and the items of collateral to be listed on the security agreement were left blank.

Victor further contends that the trial court erred when it found that he ratified the note by failing to defend the contract action on the basis that it was a forgery, and by allowing the property to be repossessed and sold. Victor contends that since he did not learn the note was a forgery until February 1985, he could not be deemed to have ratified it before that time.

These contentions fail to focus on the factors necessary for ratification. The documents involved in this case fall within the purview of the Uniform Commercial Code. *Wang I, supra.* SDCL 57A-3-404, in pertinent part, provides: "Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it." An "unauthorized" signature is "one made without actual, implied or apparent authority and includes a forgery." SDCL 57A-1-201(43).

■ This court has defined ratification as follows:

Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, *is given effect as if originally authorized by him*[.] (emphasis added)

*Bank of Hoven, supra,* 382 N.W.2d at 41. The affirmance required to establish ratification may be either express or implied from conduct showing an election to treat an unauthorized act as authorized, or by conduct which can be explained only if there was such an election. *Bank of Hoven, supra.*

Victor's conduct in the present case provides more than a sufficient basis upon which the trial court could find that no material issue of fact existed as to whether Victor ratified the promissory note. The trial court's finding is supported by the following conduct:

(1) Victor saw the note and security agreement contained his purported signatures and all the information included on the document by July 3, 1980;

(2) Since 1981, Victor has been a party to litigation seeking to enforce his obligation on the note;

(3) Through two trials and one appeal, Victor has remained in default concerning his liability on the note, even though he has been represented by counsel at various times since 1981;

(4) Victor was notified of Robert's sale of the collateral in early 1985, and failed to attend or respond in any way;

(5) Victor testified, under oath, at the first trial on the note that he had signed the note he now claims is a forgery;

(6) Victor made no protest of his name being signed to the note in this case for at least five and one-half years.

This evidence is such that a reasonable person could only draw one conclusion from all the facts and inferences and dispose of the ratification issue as a matter of law. There can be no genuine issue of material fact since Victor's conduct showed an election to treat an unauthorized act as authorized. His conduct can be explained only if there was such an election. *Bank of Hoven, supra.* There is no reasonable

construction of Victor's conduct other than he affirmed the note.

In addition to the above conduct constituting ratification there exists conduct and case authority which provides a further basis to affirm the trial court.

This court has held that the failure of a party to disaffirm a contract over a period of time may, by itself, ripen into ratification. *First Bank of Sinai v. Hyland,* 399 N.W.2d 894 (S.D.1987). The actions and inactions of Victor were gross in comparison with the facts found sufficient for ratification in that case.

■ The second prong of SDCL 57A-3-404 provides for ratification by estoppel. In *Bank of Hoven, supra,* 382 N.W.2d at 41, this court adopted the following definition of "precluded from denying it" (SDCL 57A-3-404):

> The words "or is precluded from denying it" are retained in subsection (1) to recognize the possibility of an estoppel against the person whose name is signed, as where he expressly or tacitly represents to an innocent purchaser that the signature is genuine; and to recognize negligence which precludes a denial of the signature.

Victor's admitted action of signing papers in blank and giving them to RFCU without follow up visits to verify proper completion fall within the realm of negligence and preclude a denial of the signature.

We next address the trial court's granting summary judgment against Robert. Again the issue can be simply stated. Did the trial court err in granting summary judgment to the third-party defendants on the theory that Robert elected his remedy in contract and is precluded from proceeding against these defendants in tort?

Robert in his third-party complaint alleged that RFCU, Co-op and Schramm in the July 3, 1980, assignment agreement committed acts of deceit upon him which fall within the purview of SDCL 20-10-2. Specifically, he alleged damage was caused him by these defendants selling him a forged note and by their failure to disclose to him the existence of a set off by reason of payments made on the note by Co-op.

The trial court's grant of summary judgment was based on Robert's actions in suing on the note and recovering judgments, foreclosing on the security agreements and selling the property.

Robert contends that the trial court erred in relying upon the "election of remedies" theory in granting summary judgment. His contention is that since RFCU and Co-op were not parties to, nor did they attempt to intervene in the earlier actions where Robert sued Victor and Schramm on the promissory note, the election of remedies theory is inapplicable. He further contends that this theory is inapplicable to Schramm, as well, since Schramm has not litigated his involvement in execution of the assignment agreement. In sum, he contends that the previous contract action on the note has no relevance to the present matter.

In reviewing the trial court's order granting summary judgment, we premise our decision on the principle that affirmance of such a judgment is proper if there exists any basis which would support the trial court's ruling. *Ruple, supra.*

■ Although we do not agree with Robert's reasoning, we do agree that error was committed by the trial court in relying upon the election of remedies doctrine. This court set forth some basic rules concerning the doctrine of "election of remedies" in *Schelske v. Smith,* 55 S.D. 502, 503–504, 226 N.W. 734 (1929), wherein it was stated:

> [s]eparate actions against different persons cannot be maintained, where the maintenance of one necessitates the allegation of a fact or the assumption of a position inconsistent with the maintenance of the other, and, having elected to proceed on one assumption, he cannot proceed on the other, even though against a different defendant.

The *Schelske* court further pointed out, however, that even in cases of inconsistent remedies, relief may be possible in some cases. Such cases would involve situations where allowance of only one of the incon-

sistent actions would result in only a partial remedy.

■ On the other hand, distinct and independent grounds of action arising from the same transaction which may be concurrently or consecutively pursued to satisfaction are not subject to the doctrine of election of remedies. *See* 25 Am.Jur.2d *Election of Remedies*, § 13 (1966). This rule concerning consistent remedies was well stated in *Bankers Trust Co. v. Pacific Employers Insurance Co.*, 282 F.2d 106 (9th Cir.1960), as follows:

> However, this doctrine of election of remedies applies only to choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed. 'The doctrine does not require election between distinct causes of action arising out of separate and distinct facts.' It is the law that one who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud.... The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction. 'Thus an action on contract induced by fraud is not inconsistent with an action for damages for the deceit; * * *.' 'A right of action on a contract and for fraud in inducing plaintiff to enter into such a contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other.' (citations omitted).

282 F.2d at 110.

Robert's suit on the contract and his third-party complaint action for tort damages alleging forgery and deceit are two different causes of action with separate and consistent remedies. Robert, by bringing suit in contract did not make an election of remedies that would bar this action for deceit.

Even if these remedies could be considered inconsistent, as *Schelske* points out, relief is not always precluded. Suppose hypothetically, that Robert had not undertaken any acts to foreclose, but had started an action to recover the entire balance on the note and was not precluded from recovering, except to the extent of the set offs.

Assuming then, hypothetically, that these remedies are inconsistent, we would then have a case, such as described in *Schelske*, where Robert would be entitled to proceed in contract against Schramm and in tort for deceit against RFCU because his action in contract would result in only a partial remedy. The purpose of this doctrine is not to prevent recourse to any remedy, but to prevent double redress for a simple wrong. 25 Am.Jur.2d, *Election of Remedies* § 1 (1966).

Although the trial court erred in granting summary judgment against Robert based on the doctrine of election of remedies, there exists other bases to support the trial court's ruling.

■ Robert's claim against the third-party defendants for their selling him a forged note is rendered moot because of Victor's ratification of that note. Summary judgment against Robert on his claim of damages for deceit for failure to disclose the existence of a set off by reason of payments made on the note by Co-op is fully supportable because Robert cannot show any damage arising from any misrepresentation. In *Wang II*, we determined that Robert was barred from seeking a deficiency judgment by reason of his acts of strict foreclosure on the property covered by the security agreements. Had there not been any sums set off, such sums would merely have been included in the amount of the deficiency which Robert was barred from claiming anyway. Robert was afforded his full remedy for all wrongs committed against him. Affirmance of the trial court's grant of summary judgment against Robert is proper upon these bases.

The orders granting summary judgment against Victor and Robert are affirmed.

WUEST, C.J., and MORGAN, SABERS and MILLER, JJ., concur.

GERKEN, Circuit Judge, for HENDERSON, J., disqualified.