1997 SD 4

**CITY OF COLTON, South Dakota, Plaintiff and Appellant,**

v.

**Marie SCHWEBACH, d/b/a Schwebach Insurance Agency, and Employers Mutual Casualty Company, a corporation, Defendants and Appellees.**

No. 19509.

Supreme Court of South Dakota.

Argued Sept. 12, 1996.

Decided Jan. 8, 1997.

Rehearing Denied Feb. 20, 1997.

F.M. Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.

Mark F. Marshall of Johnson, Heidepriem, Miner & Marlow, Sioux Falls, for defendant and appellee Schwebach.

Douglas M. Deibert of Cadwell, Sanford, Deibert & Garry, Sioux Falls, for defendant and appellee Employers Mutual.

AMUNDSON, Justice.

[¶ 1] City of Colton, South Dakota (City), appeals the circuit court's judgment in favor of Marie Schwebach, d/b/a Schwebach Insurance Agency (Schwebach), and Employers Mutual Casualty Company (Employers). We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] City employed Linda Westberg (Westberg) as Finance Officer for sixteen years. Between October 1, 1991, and October 1, 1992, Westberg admitted to misappropriating City's funds in the amount of $64,700 through various transactions. After the losses and embezzlements were discovered in January of 1993, City filed a claim with Employers under the employee dishonesty provision in the liability insurance policy issued to City.

[¶ 3] Employers' policy contained two exclusions applicable to City's claim:

. . .

c) **Bonded Employee:** Loss caused by any "employee" required by law to be individually bonded.

d) **Treasurer or Tax Collector:** Loss caused by a treasurer or tax collector by whatever name known . . . .

These provisions specifically excluded coverage for the activities of Westberg because she was considered to be the city treasurer. In addition, SDCL 9–14–6 requires Westberg to be individually bonded in her capacity as Finance Officer and the record discloses she was not bonded.* After considering the policy exclusions as well as the bonding requirement imposed by South Dakota law, Employers denied City's claim.

[¶ 4] Prior to Employers insuring City, Great American Insurance Company (Great American) provided the insurance package

for City (from October 1, 1983, to October 1, 1990). The policy issued by Great American contained the identical exclusions as Employers' policy regarding bonded employees and treasurers. Great American's coverage concluded during the summer of 1990, when City was advised Great American would not provide continuing coverage because City owned and operated a swimming pool with a diving board.

[¶ 5] Since the swimming pool is a significant source of entertainment in City, the council decided to obtain coverage elsewhere. During June of 1990, City Mayor Cornelius Van Helden (Van Helden) contacted Schwebach to request a coverage quote for identical policy coverage as previously provided by the Great American policy. Schwebach reviewed the current policy and provided a quote, with coverage to be written through Employers. Neither Van Helden nor any other officer, agent or employee of City requested any further review of coverage, or any recommendations on coverage from Schwebach. Schwebach was simply instructed to provide a quote for the same coverage which had previously been in force under Great American's policy. In fact, Van Helden used the phrase "apples to apples," requesting identical coverage. At no time does the record disclose a specific request by City for employee dishonesty coverage to be extended to cover Westberg. City accepted the quote from Employers and a policy was issued, effective October 1, 1990, insuring City for two policy years through October 1, 1992, providing identical coverage as the Great American policy which included the same exclusions for bonded employees and treasurers as Employers' policy.

[¶ 6] Prior to awarding Schwebach and Employers the coverage, neither Van Helden

---

\* SDCL 9–14–6 reads as follows:

In first and second class municipalities, all appointive officers before entering upon the discharge of their duties shall take and subscribe an oath or affirmation of office, in the form required by the Constitution, and furnish an undertaking to be approved by the governing body in such sum as it shall prescribe, conditioned for the faithful performance of the duties of their offices and to account, pay over, and deliver all money or property coming into their hands by virtue of their office according to law.

See also SDCL 9–14–6.1, which states:

The amount of the bond of the municipal finance officer shall be annually established by the governing board in an amount equal to the maximum monetary total estimated to be on hand at any one time, but the amount of such bond required may not exceed two hundred fifty thousand dollars in municipalities of the first class or one hundred fifty thousand dollars in municipalities of the second or third class.

· nor any other officer, agent or employee of City had ever read any of the insurance policies in their entirety. The subject of extending the coverage for employee dishonesty to the City Finance Officer never arose between or among any City employees before Schwebach issued the policy. In addition, no officer, employee, or agent of City had any contact with anyone from Employers prior to January of 1993, concerning this issue of extending coverage.

[¶ 7] City claimed Schwebach owed a duty to City of exercising reasonable care as a soliciting agent, breached that duty, and proximately caused damages. City also claimed Employers was negligent under the theory of respondeat superior. The trial court held that Schwebach had no duty to advise or suggest insurance coverage to City, and that Schwebach merely followed City's request to obtain an identical policy. Finding that Schwebach had no such duty, the trial court determined there was no negligence and, therefore, did not reach the issue of liability of Employers under the theory of respondeat superior. City appeals, raising the following issues:

I. Whether the trial court erred by concluding that Schwebach owed City a limited duty of care?

II. Whether the trial court erred by finding that Schwebach was not negligent?

III. Whether Employers is liable to City for the negligent acts of Schwebach under the doctrine of respondeat superior?

## STANDARD OF REVIEW

[¶ 8] Our standard of review of the trial court's findings of fact is under a clearly erroneous standard. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995). The trial court's findings will not be disturbed unless the court is "firmly and definitely convinced a mistake has been made." *Jasper*, 540 N.W.2d at 401. Conclusions of law, on the other hand, are reviewed under a de novo standard, giving no deference to the trial court's conclusions of law. *Id.* Although the fact finder generally determines whether a duty has been breached, the *existence* of the duty is a question of law. *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543 n1 (Minn 1989) (citing Prosser & Keeton, *The Law of Torts*, § 37 (5th ed 1984); Restatement (Second) of Torts § 328B (1965)).

## DECISION

### [¶ 9] Duty of Care of Insurance Agent

[¶ 10] The duty of an insurance agent was discussed by this court in both *Fleming v. Torrey*, 273 N.W.2d 169, 170 (S.D.1978), and *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991). The duty consists of "procur[ing] insurance of the kind and with the provisions specified by the insured." *Fleming*, 273 N.W.2d at 170. The court in *Trammell* added that an insurance "agent had a duty to obey [client's] instructions in good faith and with reasonable professional skill. [The agent] had no duty to go beyond this standard and ask [client] further questions if [client] appeared clear about what he wanted." 473 N.W.2d at 462.

[¶ 11] Consistent with the holding in *Trammell*, Schwebach "obey[ed] [City's] instructions in good faith and with reasonable professional skill[,]" and had no duty to inquire further since City was clear as to its desired coverage. *Id.* As the trial court found, "[n]either Van Helden nor any other officer, agent or employee of City requested any review of coverages, or any recommendations on coverages from Schwebach, but only asked Schwebach to provide a quote for the same coverages which had been in force previously." Furthermore, "Van Helden asked Schwebach to provide the same coverages the City previously had, and used the phrase 'apples to apples,' in making the request for the identical coverages City previously had." Thus, Schwebach simply procured the insurance policy requested by City.

[¶ 12] City claims that *Trammell* is inapplicable because the fact situation involved here is "more complex." Specifically, City states that, since City thought there was prior coverage for the theft by the Finance Officer, such coverage was specifically requested. However, the trial court found that

"[a]lthough various city officials may have assumed there was coverage for employee dishonesty of [Westberg], such assumption was not based on any statements, representations, or other actions of Schwebach or Employers." In fact, there was no general discussion between Schwebach and City regarding employee dishonesty coverage, and no specific request to extend the coverage for the Finance Officer who under statute was to be bonded. Thus, it is a stretch for City to maintain that the facts involved in this case were "more complex" when City merely instructed Schwebach to obtain identical coverage to the policy previously in force. *See, e.g.,* Couch on Insurance 2d § 25:60 (1984) (stating that an agent may assume that a renewal of a policy involves the same conditions when insured does not inform the agent otherwise).

[¶ 13] Although Van Helden and other City officials assumed there was coverage for employee dishonesty, none of them had ever actually read Great American's or Employers' policies in their entirety. In addition, there were no statements or representations by Schwebach concerning the extension of employee dishonesty coverage to include the City Finance Officer which would induce City to rely on coverage for such activity. Had any City official read Employers' policy, the official would have seen the policy clearly excluded coverage for the City Finance Officer.

[¶ 14] Facts similar to this case which identify the result of the insured's failure to read a policy are found in American Family Mut. Ins. Co. v. Elliot, wherein the insured claimed there was coverage, although there were applicable clear, unambiguous exclusions. 523 N.W.2d 100, 102 (S.D.1994). This court noted that there was "no conduct on behalf of [insurer] … which could possibly give rise to a belief that the … policy cov-

ered [that alleged]. There is no evidence that the [insurer's] agent … made any representations to the [insureds] that [there was coverage] under the policy." *Id.* at 104. In addition, we emphasized that it is not enough to receive coverage when the insured purchased a "policy which he *barely read* " and merely assumed coverage. *Id.* (emphasis added). This court further stated: "After *reading* the policy, it would be unreasonable to conclude that [there would be coverage]." *Id.* at 103 (emphasis added). Ultimately, we held that the insured was not allowed relief on the assumed coverage, thereby emphasizing the danger of an insured assuming coverage without reading the policy.

[¶ 15] City's failure to read the policy or request that the policy extend employee dishonesty coverage to include the Finance Officer, along with Schwebach procuring the exact policy City requested, are findings of fact by the trial court that were supported by the record and were not clearly erroneous. Essentially, City received the policy it requested, and is attempting to extend the duty of an insurance agent to make inquiries which is contrary to our prior holding that such inquiries are unnecessary. *See Trammell,* 473 N.W.2d at 462. We affirm the trial court's ruling that Schwebach owed no duty to City. Based on our decision concerning this issue, we need not reach the remaining issues.

[¶ 16] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.