1997 SD 78

### SOUTH DAKOTA BOARD OF NURSING and South Dakota Board of Medical and Osteopathic Examiners, Plaintiffs and Appellees,

v.

### Judy K. JONES, Defendant and Appellant.

### No. 19803.

Supreme Court of South Dakota.

Argued Feb. 18, 1997.

Decided July 9, 1997.

---

Terry N. Prendergast of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiff and appellee Board of Nursing.

Charvin H. Dixon, Sioux Falls, for plaintiff and appellee Board of Medical and Osteopathic Examiners.

Bret Chancelor Merkle of Samp & Merkle, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] A permanent injunction was issued against Judy K. Jones (Jones), enjoining her from the practice of midwifery without a license in Union County in January of 1993. The South Dakota Board of Nursing and the South Dakota Board of Medical and Osteopathic Examiners (collectively referred to as Board) brought an order to show cause requesting Jones be held in contempt for violating the injunction. After a hearing, the trial court found Jones in contempt. She appeals and we affirm.

## FACTS AND PROCEDURE

[¶ 2.] In 1992, Board received a report that Jones was engaging in the practice of midwifery in Union County, South Dakota, without a license as required by SDCL 36–9A–2.[1] When Jones failed to respond to a verified complaint, Board gave notice of intent to take default judgment. The notice was thereafter withdrawn with Jones stipulating to a preliminary injunction enjoining her from acts of practicing midwifery without a license.

[¶ 3.] The parties stipulated to facts to which Jones swore under oath on July 22, 1992. The trial court adopted these stipulated facts and issued a memorandum opinion and an order of permanent injunction executed on January 3, 1993. Jones was permanently enjoined from practicing any acts or medical functions of a licensed midwife as defined in SDCL 36–9A–13,[2] or holding herself out as able to perform such acts. Jones' attorney was served with the injunction on January 7, 1993, and Jones was personally served on January 12, 1993. No appeal was taken and the permanent injunction remains in place.

[¶ 4.] In 1995, Jones was indicted on a charge of practicing as a nurse midwife without a license during the birth of a baby in Yankton County, South Dakota, in violation of SDCL 36–9A–35.[3] The Yankton County State's Attorney brought the charge against Jones. She was ultimately acquitted of the charge.

[¶ 5.] On May 26, 1995, Board brought an order to show cause requesting Jones be held in contempt for violating the injunction. Jones was alleged to have acted as a midwife during the birth of a baby in Clay County, South Dakota, in direct violation of the 1993 permanent injunction. Jones filed a motion for appropriate relief by requesting the permanent injunction be dissolved. After a hearing was held on July 15, 1996, the trial court found Jones in contempt. Next, the court imposed a sixty-day jail sentence for contempt, but suspended the execution of the sentence on the condition that Jones not violate the injunction in the future and file a bond of $5,000, which was "conditioned upon the condition that she no longer engages in practicing as an unlicensed midwife in violation of the permanent injunction and commits no further violations of the permanent injunction[.]"

---

1. SDCL 36–9A–2 reads:

 No person may practice or offer to practice as a nurse practitioner or nurse midwife in this state unless the person is currently licensed to practice by the boards.

2. SDCL 36–9A–13 states:

 A nurse midwife may accept the delegation of and perform the following medical functions:
 (1) Management of the prenatal and postpartum care of the mother-baby unit;

 (2) Management and direction of the birth;
 (3) Provision of appropriate health supervision during the interconceptual period to include family planning services; and
 (4) Prescription of appropriate medications....

3. SDCL 36–9A–35 reads, in part:

 No person may:
 (1) Practice or offer to practice as a nurse practitioner or nurse midwife without being licensed under this chapter; ...

[¶ 6.] On July 26, 1996, Jones filed a motion for reconsideration, which was summarily denied. Jones appeals this denial, raising the following issues:

 I. Whether Board is precluded from proceeding against Jones for contempt of the injunction due to the criminal proceedings against Jones in 1995.

 II. Whether the trial court has subject matter jurisdiction.

 III. Whether there is sufficient evidence that Jones willfully violated the injunction.

 IV. Whether the bond is excessive.

 V. Whether SDCL ch 36–9A, as applied, violates constitutional rights of Jones.

### STANDARD OF REVIEW

[¶ 7.] Our standard for reviewing cases involving determinations of both law and fact was clearly stated in *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771:

Our standard of review of the trial court's findings of fact is under a clearly erroneous standard. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995). The trial court's findings will not be disturbed unless the court is "firmly and definitely convinced a mistake has been made." *Jasper*, 540 N.W.2d at 401. Conclusions of law, on the other hand, are reviewed under a de novo standard, giving no deference to the trial court's conclusions of law. *Id.*

### DECISION

[¶ 8.] **I. Election of Remedies.**

■ [¶ 9.] Jones maintains that, pursuant to SDCL 36–9A–40, Board is precluded from proceeding against her via injunction due to the criminal proceedings in 1995. SDCL 36–9A–40 provides: "An action for injunction is an alternative to criminal proceedings, and the commencement of one proceeding by the boards constitutes an election." Therefore, she claims the commencement of criminal proceedings prevented the subsequent contempt proceedings. Further, Jones claims

the criminal proceedings against her constitute an abandonment of restrictions imposed in the injunction.

■ [¶ 10.] The trial court rejected this argument, stating:

The Permanent Injunction was for an act committed in Union County, and the injunction was entered for that act and no criminal charges were brought. The election not to proceed criminally at that time was the election between the injunction and criminal act. When the acts in Yankton County were brought criminally, there was an election as to those two actions, but that election did not act to terminate the prior injunction. If those two acts were the basis of contempt, there would be a question of double jeopardy, placing the defendant in a position to be punished in essence criminally and for contempt, twice for the same act.

Thus, the trial court held any subsequent acts of Jones regarding midwifery provided for an independent election by Board. We review this legal determination under a de novo standard. *City of Colton*, 1997 SD 4, at ¶ 8, 557 N.W.2d at 771.

■ [¶ 11.] By the use of the phrase "commencement of *one* proceeding" in SDCL 36–9A–40 (emphasis added), the legislature's intent to address one injury or wrong is demonstrated. *See, e.g.*, SDCL 36–9A–36 (referring to the prosecution of a "single act"). Furthermore, under the election of remedies doctrine, the purpose is to prevent a double recovery for a *single* wrong. *See, e.g., JCA Partnership v. Wenzel Plumbing & Heating, Inc.*, 978 F.2d 1056, 1061 (8th Cir. 1992); *Vesta State Bank v. Independent State Bank of Minn.*, 518 N.W.2d 850, 855 (Minn.1994); *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 506 (Mo.1993); *Wang v. Wang*, 447 N.W.2d 519, 524 (S.D.1989); *Swain v. Leahy*, 111 N.C.App. 884, 433 S.E.2d 460, 461 (1993); 25 AmJur2d *Election of Remedies* § 2 (1996); 28A CJS *Election of Remedies* § 2 (1996). As we stated in *Wang*, the " 'doctrine of election of remedies applies only to choosing between different remedies allowed by law on the *same* state of facts, where the party

has but *one* cause of action, *one* right infringed, *one* wrong to be redressed.'" 447 N.W.2d at 524 (quoting *Bankers Trust Co. v. Pacific Employers Ins. Co.*, 282 F.2d 106, 110 (9th Cir.1960)) (emphasis added). This case, however, does not involve the *same* injury or wrong. Rather, the initial permanent injunction, the criminal proceedings, and the subsequent contempt proceedings all involved separate alleged instances of midwifery in three different counties. It is undisputed these instances involved different sets of facts. *See, e.g., Casper v. Paine Webber Group, Inc.*, 787 F.Supp. 1480, 1509–10 (D.N.J.1992) (holding an election to sue under one statute did not waive the right to sue under a different statute because the claims were derived from a separate set of facts); *Cater v. Cater*, 311 Ark. 627, 846 S.W.2d 173, 175 (1993) (noting the doctrine was inapplicable because the remedies did not arise from the same cause of action); *Breniman v. Agricultural Consultants, Inc.*, 829 P.2d 493, 497 (Colo.Ct.App.1992) (stating, "The concept applies when different remedies, based on the same set of facts, are provided for a given wrong."); 25 AmJur2d *Election of Remedies* § 1 (1996) (stating, "[A]n election of remedies is the act of choosing between two or more different and coexisting methods of procedure and relief allowed by law on the same set of facts."); 28A CJS *Election of Remedies* § 2 (1996) (noting that election of remedies arises from the same set of facts).

[¶ 12.] Each instance of midwifery is a separate transaction. There is no abandonment of the permanent injunction by the allowance of the commencement of criminal proceedings against Jones. Since each act of midwifery involves separate facts, Board retains the right to choose what remedy to pursue in each instance.

4. SDCL 21–34–2 *reads:*
 The officer who issued, or the party to a proceeding seeking enforcement of, the process, subpoena, order, rule, regulation, judgment, or other legal command referred to in § 21–34–1 or who is vested with the duty of enforcing the obedience or stopping the violation of the statute, or in case of a department, commission, or board, either the presiding officer thereof or a majority of the members, shall prepare a notarized certificate of the facts showing the obedience which it desires

[¶ 13.] We, therefore, hold the trial court did not err by finding Board was not precluded from initiating contempt proceedings due to the prior criminal proceedings against Jones.

[¶ 14.] **II. Subject Matter Jurisdiction.**

■ [¶ 15.] Jones argues there was an insufficient showing by Board regarding the trial court's subject matter jurisdiction according to SDCL 21–34–2.[4] Specifically, she contends the affidavit alleging contempt fails to demonstrate the case is one over which the trial court has jurisdiction. In addition, Jones maintains the affidavit made no showing that she violated the order. Although the issue of jurisdiction was not raised at the trial court level, we will address it on appeal pursuant to *State v. Eidahl*, 486 N.W.2d 257, 259 (S.D.1992); *State v. Lyerla*, 424 N.W.2d 908, 912 (S.D.1988).

[¶ 16.] On May 28, 1996, Board submitted an affidavit of Diana Vander Woude, R.N., M.S. (Vander Woude) in support of an order to show cause. This affidavit and attached exhibits are considered to be the complaint. *Otten v. Otten*, 245 N.W.2d 506, 508 n* (S.D. 1976). In the same respect, a responsive affidavit constitutes the answer. *Id.*

[¶ 17.] As to jurisdiction, SDCL 21–34–2 requires Board prepare a "notarized certificate of the facts showing the ... violation which it desires to stop so that the jurisdiction of the court will appear[.]" The affidavit submitted by Board includes references to the injunction entered by the same trial court on January 4, 1993, against Jones. The references which identify the jurisdiction of the trial court include: "This court entered an injunction ..."; "This court's injunction...."

[¶ 18.] Attached to the affidavit were copies of the order of permanent injunction, find-

to enforce or the violation which it desires to stop so that the jurisdiction of the court will appear; showing also the date of the occurrence or condition involved, the name, address, and location so far as known of the person against whom it desires to invoke the contempt process; and showing all relevant facts necessary to establish the right and charge and to specify the relief which it desires to obtain by such contempt process.

ings of fact and conclusions of law, stipulations to facts, memorandum opinion, notice of entry of order of permanent injunction, certificate of service, certificate of live birth, and application for certificate of live birth.[5] The certificate of live birth revealed that under "attendant's name and title" Jones listed her name and identified herself as "other midwife." Likewise, the application for the certificate listed Jones as "other midwife." [6]

[¶ 19.] In response, on July 19, 1996, Jones filed an affidavit which had originally been filed in Yankton County on August 21, 1995. The affidavit includes the statements, "I have practiced as a Direct Entry Midwife since September of 1984, and have attended 150 births to this date." Furthermore, similar statements were made by Jones' counsel during the hearing, such as, "Judy is a direct-entry midwife[,]" and "That's what Judy is all about. She helps babies—she helps women have their baby at home." The application for certification was even referenced by Jones' counsel during the hearing:

> In this Exhibit it states that: Judy Jones was the attendant at the birth. And it gives a couple of check numbers. You can check M.D. for medical doctor. You can check TOM—I'm not sure what that is—you could check CNM for certified nurse midwife; or you can check, "other." It says "other" because—my copy is cut off—but I think it says "other midwife." And that's what Judy is.

 [¶ 20.] After receiving this affidavit from Jones, as well as hearing various admis-

sions of fact by Jones' counsel, the trial court found Jones was in contempt. In order to have properly done so, the trial court had to determine whether Board established the four elements for contempt: "(1) existence of an order, (2) knowledge of that order, (3) ability to comply with the order, and (4) a willful or contumacious disobedience of the order." *Weber v. Weber*, 529 N.W.2d 190, 192 (S.D.1995). The 1993 injunction was served on Jones and her attorney, meeting elements one and two.[7] As to requirement three, Jones' attorney stated during the hearing that if Jones "wanted to be a certified nurse midwife, she could." Lastly, the certificate for live birth and the application for the certificate, both described above, as well as her admissions, all establish element four, that she willfully disobeyed the order.

[¶ 21.] Since Board demonstrated the prima facie case for contempt with the affidavit and attachments, the requirement of SDCL 21–34–2 was met, which states the party enforcing the injunction must show "all relevant facts necessary to establish the right and charge[.]" Thus, the trial court properly exercised its jurisdiction.

[¶ 22.] **III. Sufficiency of the Evidence.**

[¶ 23.] Jones maintains there was no evidence that she willfully violated the injunction. This issue was addressed within the discussion of subject matter jurisdiction, specifically relating to the adequacy of the affidavit filed by Board. We note only that "[o]n appellate review, this Court in the reso-

---

5. There is no objection by Jones as to the authenticity of the certificate or application. In addition, no evidence was offered by Jones refuting Board's contention that she managed the birth of the baby listed on the certificate.

6. While Jones attempts to distinguish between "direct-entry midwife" and "certified nurse midwife," neither SDCL 36–9A–1 (referring to other statute for definition) nor SDCL 36–9A–13 (defining nurse midwife) makes such a distinction. Furthermore, the order of permanent injunction prohibited Jones from "practicing *any* acts or medical functions of a nurse midwife" (emphasis added). In the affidavit Jones resubmitted, she stated that she had "attended 150 births[,]" and her counsel admitted at the hearing that she "helps women have their baby at home." Both of these admissions constitute a violation of the order of permanent injunction, without distin-

guishing between "certified nurse midwife" and "direct-entry midwife." Moreover, no argument concerning such a distinction was determined at the initial stage of the proceedings, and no appeal was taken from the 1993 permanent injunction. Therefore, the issue has been waived by Jones.

7. Jones argues Board failed to show the Judy Jones residing at the address listed in the affidavit in support of order to show cause is the same Judy Jones residing at the address listed in the order of contempt. She waives this issue, however, by failing to provide the trial court the opportunity to address the issue. *Watertown v. Dakota, Minn. & E. R.R.*, 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577. In fact, she never denied being the same Judy Jones at the contempt hearing or at any other time.

lution of sufficiency of evidence issues, should examine the record to determine only if there is competent and substantial evidence to support the [trial court's] verdict." *LBM, Inc. v. Rushmore State Bank,* 1996 SD 780, ¶ 18, 543 N.W.2d 780, 783. Considering the certificate for live birth listing Jones as "other midwife," the application for the certificate, and the various admissions discussed above, there is substantial evidence to support the trial court's decision.

### [¶ 24.] IV. Bond

[¶ 25.] The trial court sentenced Jones to sixty days in jail for contempt, but suspended the execution of the sentence on the condition that Jones not violate the injunction in the future and put up a bond of $5,000.[8] Jones claims the $5,000 bond requirement is excessive due to her indigency. The trial court was presented with an affidavit of indigency from Jones stating her total assets consisted of less than $4,000. However, Jones failed to raise any argument with the trial court concerning the alleged violations of her constitutional rights. As we have stated, "issues not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on appeal." *Watertown,* 1996 SD 82, at ¶ 26, 551 N.W.2d at 577. Having failed to make an argument regarding excessive bond during the hearing, in her motion for reconsideration, or at any time during the proceedings, the issue is deemed waived.

[¶ 26.] In any event, the affidavit of indigency was filed pursuant to SDCL 15–26A–24, which states that "[t]he bond for costs, or deposit of money in lieu thereof, shall be deemed waived if appellant shall file ... an affidavit of indigency." SDCL ch. 15–26A relates to rules of appellate procedure, and not the situation in this case wherein Jones contests paying a bond as a *penalty* after being held in contempt for violating an order of permanent injunction. In other words, there is no "bond for costs" involved in Jones' argument, and she cites no authori-

---

8. This penalty is made pursuant to SDCL 21–34–6, which states, in part:
[T]he court shall have jurisdiction by order, judgment, or decree to ... punish the violation which is certified and to fix such time within which obedience may be made or violation stopped and

ty supporting the contention that the trial court abused its discretion by following SDCL 21–34–6 in such a manner as in this case.

### [¶ 27.] V. Constitutional Violations.

[¶ 28.] Jones argues SDCL ch. 36–9A violates her privacy and equal protection rights. However, she failed to make this argument to the trial court during the contempt proceedings. As we stated in *Accounts Management, Inc. v. Williams,* "[w]e have consistently held that the constitutionality of a statute cannot be raised for the first time on appeal." 484 N.W.2d 297, 301 (S.D. 1992). Although we may exercise our discretion and review a constitutional issue raised for the first time on appeal, we decline to do so because the issue "is not a matter of existing emergency to the public policy of the state." *Id.* The issue is therefore waived.

[¶ 29.] We affirm on all issues.

[¶ 30.] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

---

to order, adjudge, or decree and enforce a penalty not exceeding a fine of five thousand dollars or confinement in any county jail or state prison not exceeding one year, or both such fine and imprisonment.