1998 SD 12

William F. SORRELS, D.O., Appellee,

v.

QUEEN OF PEACE HOSPITAL,
A South Dakota corporation,
Appellant.

No. 20072.

Supreme Court of South Dakota.

Argued Dec. 3, 1997.

Decided Feb. 11, 1998.

Rehearing Denied March 19, 1998.

Scott N. Heidepriem, Mark F. Marshall, of Johnson, Heidepriem, Miner, Marlow & Janklow Sioux Falls, for appellee.

James E. McMahon, Roger A. Sudbeck, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellant.

KONENKAMP, Justice.

[¶ 1.]Doctor William F. Sorrels admitted to possession of cocaine and resigned his medical staff privileges at Queen of Peace Hospital. After completing a drug and alcohol rehabilitation program, his privileges were restored, subject to conditions. When federal charges were later brought against him, he agreed to further restrictions, including that he not exercise any privileges requiring "a valid DEA registration permit and number," without which he was barred from dispensing controlled substances. Nonetheless, he prescribed a controlled substance for one of his patients believing another physician could later co-sign his order. The Hospital revoked his privileges without a hearing based upon his written waiver. Sorrels obtained a writ of mandamus from the circuit court ordering the Hospital to hold a due process hearing. Was he clearly and indisputably entitled to mandamus relief? Based upon the conditions he agreed to, we conclude Sorrels had no clear right to compel the Hospital to give him a hearing, and thus the circuit court abused its discretion in granting mandamus.

## Facts

[¶ 2.]On December 6, 1993, during an interview with agents of the Drug Enforcement Agency, William F. Sorrels, D.O., a licensed physician engaged in private practice, admitted to illegal possession of cocaine for personal use. Sorrels later entered the Worthmore Drug and Alcohol Treatment program and voluntarily relinquished his medical staff privileges at the Queen of Peace Hospital in Mitchell, South Dakota.[1] After completing treatment, he reapplied for staff privileges at the Hospital, which were restored subject to certain conditions. Sorrels was thereafter indicted in January 1995 on charges of cocaine possession. As part of his guilty plea to a misdemeanor, he signed a written plea agreement, relinquishing his DEA certificate, without which he could not lawfully order, prescribe, or dispense controlled substances.[2] See 21 U.S.C. § 821 et seq. Consequently, he agreed to new restrictions on his privileges.[3] Two pertinent conditions required:

1. Doctor Sorrels must voluntarily relinquish all medical staff privileges granted to him that require a valid DEA registration permit and number.

   \*   \*   \*   \*   \*   \*

4. With regard to the relinquishment of Doctor Sorrels' medical staff privileges, he must waive any and all rights of due process to which he is entitled under the Medical Staff Bylaws, Rules and Regulations of Queen of Peace Hospital, to be applicable *only* to acts which would violate the conditions placed upon his privileges.

(emphasis in original). His voluntary relinquishment also provided:

> Sorrels understands that by signing this agreement and surrendering his Certificate, he will be no longer authorized to prescribe, administer, dispense, order, possess, or in any manner handle controlled substances.

1. At a hearing before the Hospital's Ad Hoc Judicial Review Committee on August 28, 1995, Sorrels admitted he stole cocaine from the Hospital pharmacy. As part of his federal plea agreement, he was required to pay restitution to the Hospital.

2. Sorrels April 14, 1995 plea agreement stated in part:

   > As part of this agreement, Sorrels agrees to surrender to the Drug Enforcement Administration his DEA Certificate of Registration.

3. On October 28, 1995, Sorrels executed the "Voluntary Relinquishment of Medical Staff Privileges and Waiver of Right to Due Process and Fair Hearing," with its attached "Conditions Placed Upon Dr. Sorrels' Associate Medical Staff Privileges at Queen of Peace Hospital."

I, William F. Sorrels, D.O., do hereby voluntarily relinquish, effective October 31, 1995, any and all medical staff privileges at Queen of Peace Hospital in Mitchell, South Dakota, that require a valid Drug Enforcement Agency (DEA) registration permit and number. I also do hereby voluntarily give up all rights of due process which I am entitled under the Medical Staff By-laws, Rules and Regulations of Queen of Peace, to be applicable only to acts which would violate the conditions as set forth in the attached list of "Conditions Placed Upon Dr. Sorrels' Associate Medical Staff Privileges at Queen of Peace Hospital" incorporated by this reference.

[¶ 3.]On December 1, 1995, Dr. Ronald Anderson, the Hospital's Chief of Staff, wrote to Sorrels requesting that he "describe in detail any and all arrangements you made to insure that a physician with a valid DEA license will be available when you are confronted with a situation in which a prescription of controlled substances might be necessary." Sorrels promptly answered, writing "I have arranged with my associate, Dr. Christiane Maroun along with other surgeons, orthopedic surgeons and family practice specialists to co-sign my orders for controlled substances when the necessity arises for their use on my patients."[4] On December 14, 1995, Anderson replied: "Since Condition #1 does not allow you to prescribe and/or sign orders for controlled substances, it would be inappropriate to have other physicians co-sign orders you prescribe for controlled substances."

[¶ 4.]As it happened, however, between Sorrels' proposal and Anderson's response, the incident occurred giving rise to this case. Sorrels' two-year-old patient, Trevor Clark, had been suffering from febrile seizures. Trevor's father took him to the Hospital Emergency Room in the early morning of December 11, 1995. At 4:00 a.m., Sorrels was called. He prescribed Diazepam, a controlled substance, to be administered orally to Trevor. An emergency room physician was present, but Sorrels never conferred

with that doctor, nor did he request any other physician with a DEA certificate to order or co-sign for the drug. The Hospital Executive Committee concluded Sorrels had violated his conditions by ordering a controlled substance without a DEA certificate and recommended his privileges be revoked. On December 20, 1995, the Board of Trustees agreed and effectively terminated Sorrels' staff privileges.

[¶ 5.]Initially, Sorrels sued the Hospital for damages. Then, in October 1996, he filed an Application for Writ of Mandamus. The circuit court granted the writ compelling the Hospital to give Sorrels a due process hearing and reinstating his staff privileges until such hearing could be completed. We stayed the order of temporary reinstatement and granted intermediate appeal to consider whether Sorrels established a clear and indisputable case for mandamus.

### Analysis and Decision

### 1. The Nature of Mandamus

[¶ 6.]Mandamus is a potent, but precise remedy. Its power lies in its expediency; its precision in its narrow application. It commands the fulfillment of an existing legal duty, but creates no duty itself, and acts upon no doubtful or unsettled right. *See generally Healey v. Rank*, 82 S.D. 54, 58, 140 N.W.2d 850, 852 (S.D.1966). To prevail in seeking a writ of mandamus, the petitioner must have a clear legal right to performance of the specific duty sought to be compelled and the respondent must have a definite legal obligation to perform that duty. *S.D. Trucking Ass'n., Inc., v. S.D. Dept. of Transp.*, 305 N.W.2d 682, 684 (S.D.1981) (citing *Bandy v. Mickelson*, 73 S.D. 485, 488, 44 N.W.2d 341, 342 (1950)) (quoting from *Bailey v. Lawrence County*, 2 S.D. 533, 537, 51 N.W. 331, 332 (1892)); *Musselman v. Governor*, 448 Mich. 503, 533 N.W.2d 237, 245 (1995); *State* ex rel. *Lillie v. Cosgriff Co.*, 240 Neb. 387, 482 N.W.2d 555, 557 (1992) ("A writ of mandamus is an extraordinary remedy ... and will issue only when the duty to act is clear."); *Bingo Coalition v. Bd. of State Can-*

---

**4.** Dr. Anderson's deposition testimony furnishes some insight about this terminology: "Co-signing is signing the order after the fact, after the medi- cine has already been given. It may be a day later, it may be a week later or whenever it gets to medical records."

*vassers*, 215 Mich.App. 405, 546 N.W.2d 637, 640–41 (1996).

[¶ 7.]Mandamus entails the exercise of discretion, thus the standard of review for a circuit court's decision to grant or deny mandamus is abuse of discretion. *Brown v. City of Yankton*, 434 N.W.2d 376, 378 (S.D. 1989). *Cf.* 1 S. Childress & M. Davis, *Federal Standards of Review* § 4.22, at 4–167 (2d ed 1992) (most federal courts employ an augmented abuse of discretion inquiry) (citing cases). Because mandamus may only be granted under exceptional circumstances which require a drastic remedy, it must be shown entitlement to the writ was clear and indisputable. *See generally Crowley v. Spearfish Indep. Sch. Dist.*, No. 40–2, 445 N.W.2d 308 (S.D.1989); *Anderson v. City of Sioux Falls, Minnehaha County*, 384 N.W.2d 666, 668 (S.D.1986) (mandamus not an absolute right, but a matter of sound discretion); *Bailey*, 2 S.D. at 536, 51 N.W. at 332.

> The writ of mandamus may be issued by the Supreme and circuit Courts, to any inferior tribunal, *corporation, board, or person*, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; *or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.*

SDCL 21–29–1 (emphasis added). Thus, the purpose of the writ is "to compel the performance of an act which the law specially enjoins as a duty resulting from an office . . . or to compel the admission" of persons to the use and enjoyment of rights to which they are entitled, and from which they are unlaw-

fully precluded. *Anderson*, 384 N.W.2d at 668.

[¶ 8.]Although Sorrels asks merely for a due process hearing, not a ruling dictating its result, he still must establish an unquestionable right to such hearing. Undoubtedly, removal from medical staff privileges affects a physician's livelihood and in the appropriate case mandamus may be invoked to protect fundamental interests. *See Anton v. San Antonio Community Hosp.*, 132 Cal.App.3d 638, 183 Cal.Rptr. 423, 426 (1982). In the absence of other adequate remedies, mandamus is a valid process to compel private corporations to perform their legal obligations.[5] *Kroeger v. Sioux Falls Humane Soc.*, 83 S.D. 595, 598, 163 N.W.2d 539, 541 (1968); *Smith v. Otter Tail Power Co.*, 80 S.D. 327, 330, 123 N.W.2d 169, 170 (1963); *see also Stern v. South Chester Tube Co.*, 390 U.S. 606, 607, 88 S.Ct. 1332, 1333, 20 L.Ed.2d 177 (1968)(federal courts may impose mandatory remedy against private corporation under All Writs Act). Sorrels seeks to compel the Hospital to discharge a ministerial duty by complying with its bylaws to provide him a hearing. By the terms of his voluntary relinquishment, the propriety of granting Sorrels' requested writ hinges first on whether prescribing a controlled substance for Trevor Clark violated the conditions of his staff privileges, and second on whether he waived his right to a hearing.

### 2. Violation of Conditions for Medical Staff Privileges

[¶ 9.]Sorrels' waiver of his contractual right to a due process hearing applies only in the event he violated a condition imposed upon his staff privileges. Obviously, the Hospital had no obligation to grant Sorrels

---

5. The Hospital argues "the general rule is that mandamus does not lie to compel a private institution to perform its obligations resting in contract with an individual." *See* 52 AmJur2d *Mandamus*, § 249 (1970). That argument was never made to the trial court, nor was it included in the Hospital's objections to the circuit court's Findings of Fact and Conclusions of Law. This Court has long held that issues not addressed or ruled upon by the trial court will not be addressed for the first time on appeal. *City of Watertown v. Dakota, Minn. & E. R.R. Co.*, 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577 (citing *Keegan v. First Bank*

*of Sioux Falls*, 519 N.W.2d 607, 615 (S.D.1994)); *Bottum v. Herr*, 83 S.D. 542, 548, 162 N.W.2d 880, 883 (1968). We may, however, address for the first time on appeal whether the trial court had subject matter jurisdiction. *South Dakota Bd. of Nursing v. Jones*, 1997 SD 78, ¶ 15, 566 N.W.2d 142, 146; *State v. Eidahl*, 486 N.W.2d 257, 259 (S.D.1992) ("Notwithstanding that omission, this Court is required to consider the issue of subject matter jurisdiction where it was not raised below in order to avoid an unwarranted exercise of authority.").

any privileges in 1995 after he entered a plea in response to federal drug charges. His request was, however, granted subject to strict compliance with certain conditions. Though he maintains substantial questions remain on how the conditions were to be applied to his practice at the Hospital, the first condition was certain: Sorrels relinquished all staff privileges requiring a DEA permit. *See Wessington Springs Educ. Ass'n v. Wessington Springs Sch. Dist., No. 36–2*, 467 N.W.2d 101, 104 (S.D.1991) (quoting *AFSCME Local 1922 v. State*, 444 N.W.2d 10, 12 (S.D.1989)) ("When the terms of a negotiated agreement are clear and unambiguous, and the agreement actually addresses the subjects it is expected to cover, 'there is no need to go beyond the four corners of the contract.' ").

[¶ 10.]Instructive in revealing the full impact of losing the DEA permit is the language of the plea agreement: "Sorrels understands that by signing this agreement and surrendering his Certificate, he will be no longer authorized to prescribe, administer, dispense, order, possess, or in any manner handle controlled substances." Despite this understanding and in disregard of the clear strictures in Condition 1, Sorrels prescribed a controlled substance. He argues he honestly believed he could have other physicians later co-sign his orders. If not reason and common sense, then federal law thoroughly refutes this anomalous posture. To follow his logic, surrendering his DEA permit was pointless—he never needed one. Nevertheless, doctors may only "dispense" controlled substances "to the extent authorized by their [DEA] registration." 21 U.S.C. § 822 (Controlled Substances Act). The term "dispense" includes both prescribing and administering drugs. 21 U.S.C. § 802(10). Prohibited from dispensing, therefore, by no authority could he co-dispense. These facts adequately attest to a violation of Condition 1. Next, we examine the waiver.

### 3. Waiver of Right to Hearing

[¶ 11.]Section VIII of the Queen of Peace Medical Staff Bylaws grants physicians a right to due process before termination of staff privileges. On the other hand, Condition No. 4 and the voluntary relinquishment waived this right. The waiver was applicable *only* to acts which *violated* the conditions as set forth in the "Conditions Placed Upon Dr. Sorrels' Associate Medical Staff Privileges at Queen of Peace Hospital."

[¶ 12.]Sorrels believes he waived his contractual right to due process only if he personally ingested drugs. He has some support for this interpretation from at least one member of the Hospital's Ad Hoc Judicial Review Committee, who believed that was the intent behind the agreements. Yet, the voluntary relinquishment specifically stated if Sorrels committed "acts which would violate the conditions" imposed on his staff privileges he waived "all rights of due process." Opinions from members of the medical staff on the scope of the waiver will not override explicit contractual language unless the terms are uncertain or fail to deal with subjects intended to be addressed. *AFSCME Local 1922*, 444 N.W.2d at 12; *MEA/AFSCME Local 519 v. City of Sioux Falls*, 423 N.W.2d 164, 168 (S.D.1988).

[¶ 13.]Absent any discernible ambiguity in the written waiver, Sorrels cannot prove a clear and indisputable right to a hearing, thus he cannot compel the Hospital to provide him one. The circuit court abused its discretion in granting the writ of mandamus. We reverse and remand with direction to dismiss the writ.

[¶ 14.]MILLER, C.J., AMUNDSON, and GILBERTSON, JJ., and SRSTKA, Circuit Judge, concur.

[¶ 15.]SRSTKA, Circuit Judge, sitting for SABERS, J., disqualified.